524 So.2d 65 (1988)
Dorothy Smith KING, Plaintiff-Appellee,
v.
Vickie D. LOUVIERE, State Farm Mutual Automobile Insurance Company and Waters Oil Tool & Supply, Inc., Defendants-Appellants,
American Motorist Insurance Company, Intervenor-Appellee.
No. 87-197.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Rehearing Denied May 2, 1988.
*66 Koury & Koury, Joseph A. Koury, and Jeansonne & Briney, William F. Page, Jr., Lafayette, for plaintiff-appellee.
Roy, Forrest & Lopresto, Alex A. Lopresto, III, New Iberia, for defendants-appellants.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
DOMENGEAUX, Judge.
Dorothy Smith King (King) commenced these proceedings to recover damages for the injuries she sustained as the result of an automobile accident. King named as defendants: (1) Vickie D. Louviere Greig (Greig), the driver of the vehicle which struck her car; (2) Waters Oil Tool & Supply, Inc. (Waters Oil Tool), Greig's employer and the owner of the vehicle which struck the plaintiff; (3) State Farm Mutual Automobile Insurance Company (State Farm), Waters Oil Tool's automobile liability insurer; and (4) Roger Allen Waters (Waters), the sole incorporator and owner of ninety-five percent of the Waters Oil Tool stock. Intervening in these proceedings was American Motorist Insurance Company (American Motorist). American Motorist was the worker's compensation insurer of Avon Products, Inc. (Avon), King's employer.
The Trial Court rendered judgment in favor of King and American Motorist. The judgment in favor of King was rendered against Greig, State Farm and Waters Oil Tool, in solido. King was awarded $419,252.15 with interest at the legal rate accruing from May 4, 1984. King's award was itemized as follows:

General damages $100,000.00
Past medical 3,409.58
Future lost income 270,480.00
Past lost income 45,362.57
 ____________
 Total $419,252.15

State Farm's liability was limited to $100,000.00, the extent of its policy, plus interest. The defendants were cast in judgment for all costs.
American Motorist was adjudged subrogated to the rights of King against the defendants for medical payments and weekly worker's compensation. Judgment in favor of the intervenor amounted to $3,075.27 in medical payments and $16,800.00 in weekly compensation.
Waters, prior to trial on the merits, moved for and was granted summary judgment. Waters premised his argument in support of his motion on the grounds that he was not the owner of the automobile Greig was driving at the time of the accident. The defendant's affidavit which accompanied his motion attested to the fact that the automobile was owned by Waters Oil Tool.
On December 1, 1983, shortly after noontime, King, in the course and scope of her employment with Avon, was driving her 1983 Plymouth automobile in an easterly direction on U.B. Landry Road in Lafayette Parish, Louisiana. Greig, at the same time, was driving her employer's 1981 Oldsmobile in a westerly direction on the same highway. The drivers approached each other at what was described by Lafayette City Police Officer Randy Menard as a very sharp, ninety degree curve.
According to Officer Menard's testimony, the road was posted as a fifty mile per hour zone with a yellow warning sign indicating a curve and suggesting a speed of fifteen miles per hour to negotiate the curve safely. The Officer further indicated that the weather was "misty" and that the surface of the road was wet.
Greig testified that as she approached the curve, which would have required that she turn to the right and the plaintiff turn to the left, she was traveling approximately thirty to thirty-five miles per hour, believing the highway was posted forty miles per hour. She stated that the curve was very sharp and that when she attempted to slow her car, three or four car lengths before the curve, she discovered that her brakes did not work. Greig told the Court that she pumped them, but that effort produced no results and she drove "clean across" the highway into the oncoming lane of traffic. The defendant testified that upon entering the oncoming lane the plaintiff was also attempting to negotiate the curve and that *67 she struck King's automobile on the driver's side in the rear.
King testified that as she was attempting to negotiate the curve she saw the defendant's car "coming fast." She stated that Greig's vehicle crossed the center line striking her vehicle on the rear door and fender, causing the rear tire to blowout. She then testified that her car spun almost completely around and that she struck her head against the side window. King's car eventually came to rest almost entirely off the highway.
Greig, State Farm and Waters Oil Tool sought this appeal. The appellants contend that the Trial Court erred in four respects:
(1) The Trial Court erred in finding Greig negligent, failing to conclude that sudden brake failure, unanticipated by the driver of a nonowned automobile is a defense to the liability of the driver;
(2) The Trial Court erred in rendering an excessive general damage award of $100,000.00;
(3) The Trial Court erred in awarding King $270,480.00 in lost future income; and
(4) The Trial Court erred in awarding King $45,362.57 in lost past income.
American Motorist, the intervenor, raised two additional issues for review. American Motorist suggests that the Trial Court erred in failing to award it interest on its judgment and that it should additionally be awarded all worker's compensation benefits paid to or on behalf of King since the judgment of the District Court.
The initial issue on appeal addresses the negligence attributed to the defendant Greig. The Trial Court, in oral reasons, concluded that the issue of liability could be resolved "summarily" and held that "the proximate cause of this accident was due to the sole negligence of the defendant." Greig now appeals contending that as the driver of a nonowned automobile which experienced sudden, unanticipated brake failure she is free from fault and, therefore, liability. Subsequent to our review of the statutory and jurisprudential authority, we are unable to agree with the defendant. We believe the decision of the Trial Judge on this issue should be affirmed, however, we believe the reasoning to be erroneous and, therefore, assign other grounds.
Our law currently provides that both the nonowner-driver and the owner of a vehicle which experiences sudden, unanticipated brake failure are strictly liable for the resulting damage, absent proof that the harm resulted from the fault of the victim, the fault of a third person or an irresistible force. The basis of this liability is La.Civ. Code art. 2317 (1870) which provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
The benchmark decision addressing article 2317 is, of course, Loescher v. Parr, 324 So.2d 441 (La.1975). The Loescher Court held that when harm results from a vice in a thing which creates an unreasonable risk of harm, the custodian of the thing is strictly liable for the damage occasioned.
Our review of the jurisprudence has revealed that both the nonowner-driver and the owner of a vehicle which experiences sudden, unexpected brake failure are both custodians. The Louisiana Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), commonly cited as authority for the manifest error standard of appellate review, held that both the nonowner-driver and the owner of a vehicle which experiences sudden brake failure are both custodians of the vehicle for the purposes of article 2317 and, therefore, are strictly responsible for any damage which may result. See also, Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3rd Cir.1980); But see, Smith v. Crown Zellerbach Corp., 385 So.2d 307 (La.App. 1st Cir.1980) (owner liable; nonowner-driver not a party).
Although this result may appear to be a harsh imposition of liability on an unwary nonowner-driver, the nonowner-driver, although less culpable than the owner, is *68 more culpable than the innocent plaintiff. Absent such a conclusion, the risk that an owner may not have properly maintained his or her automobile is borne by the injured plaintiff, who unlike the nonowner-driver, was in absolutely no position to evaluate the condition of the vehicle or the maintenance performed by the owner.
The second issue on appeal addresses the Trial Court's general damage award of $100,000.00. The appellants contend that the award is excessive and not supported by the evidence. We have reviewed the evidence and the jurisprudence addressing quantum, and we fail to agree.
Our responsibility on appeal is to review the lower court's determination and refrain from disturbing the judgment absent finding manifest error. La.Civ.Code art. 1934(3) (1870) (in effect on December 1, 1983); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The integrity of a lower court award must not be violated without a finding by the reviewing court that the decision is clearly wrong.[1]
The primary considerations in assessing quantum are the severity and duration of the injured party's pain and suffering. Article 1934(3), supra; Head v. St. Paul Fire & Marine Insurance Co., 408 So.2d 1174 (La.App. 3rd Cir.1982), writ denied, 412 So.2d 99 (La.1982); Anthony v. Hospital Service District No. 1, 477 So.2d 1180 (La. App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986). We believe the evidence clearly establishes that King has and will continue to endure considerable pain and suffering, and that the judgment of the District Court should not be disturbed.
King, at the time of the accident, was a fifty-year-old woman who was leading a very active and successful life. She had worked for Avon for approximately fifteen years, had progressed within the company and had been the recipient of the company's highest honor, the Candle Circle Of Excellence Award. Subsequent to the accident, she has had to discontinue working, endure neck pain, bouts of depression, lack of energy, anxiety and the inability to sleep well.
King's initial medical attention came from her family doctor, an internist, Dr. Kenneth Edward McCarron. Doctor McCarron saw King on the date of the accident and on approximately fourteen other occasions from December 1, 1983 to the time of trial, October 29, 1986. Doctor McCarron prescribed a cervical collar, exercises and different medications, including cortisone injections. He described King's condition as "chronic" indicating that, although it might not be permanent, it would be one of long duration with very slow progress.
Shortly after King's initial visit to Doctor McCarron, the doctor recommended that she see Peggy Taylor Hebert, a physical therapist. King saw Hebert on seven occasions over a two week period in mid-December, 1983. King, apparently at Doctor McCarron's suggestion, did not return to the therapist after seeing Doctor McCarron for a two-week checkup. King's neck, cervical and upper back pain had not been relieved.
In early January, 1984, also at the suggestion of Doctor McCarron, King saw Dr. Stewart Phillips, an orthopedic surgeon. Doctor Phillips diagnosed King's condition as cervical disc disease. He explained that King, who had previously had discs in her neck fused, had aggravated her former condition as a result of the accident.
Doctor Phillips stated that he explained to King that her options were to either attempt additional fusion or to learn to limit her activities and accept her discomfort. The doctor stated that King chose to forgo any additional surgery and that he supported her decision. He explained that subsequent fusion operations rarely provide the profound relief experienced after the first procedure and that there exists a greater liklihood of complications as a result of a second fusion.
*69 King also saw, at the recommendation of her Ob-Gyn, Doctor Chesson, Sharon Ann Felder, a psychiatric or clinical social worker. Doctor Chesson suggested that King see Felder because she was experiencing depression, anxiety, a lack of energy, the inability to sleep well, and a decreased interest in sexual relations. King saw Felder on five or six different occasions. Felder concluded that the source of King's problems was her inability to return to work. Felder arrived at this conclusion subsequent to considerable discussions with King regarding her time with Avon and the enjoyment she received from her job.
King's own testimony further revealed the extent of her discomfort and the dramatic change her life had undergone since the accident. She explained that unless she carefully limits her activity, in particular, the extent of her driving and any lifting or bending, she experiences pain which often requires a visit to Doctor McCarron's office for a cortisone injection. King told the Court of her efforts to remain with Avon, including changing positions and attempting to alter her business activities, but that in the end she was both frustrated and depressed that her injuries had forced her to leave the job she so much enjoyed and at which she was so successful.
It is for the above stated reasons that we decline to alter the lower court award of $100,000.00 in general damages. We do not believe the District Court was manifestly erroneous.
The appellant's third issue on appeal questions the correctness of the Trial Court's decision awarding King $270,480.00 in lost future income. The Trial Judge based her decision primarily on the fact that at the time of the accident King was only fifty-years-old and was likely to work another fifteen years, until she was sixty-five. This decision rested on the fact that Avon had a retirement plan which commenced payments at age sixty-five and on the fact that King had testified that she did not anticipate, prior to the accident, retiring before age sixty-five. The Court then concluded, based on King's prior earnings, that she would have earned, at the very least, $25,000.00 per year. The Judge multiplied $25,000.00 by fifteen years and arrived at a gross earnings figure of $375,000.00. The Court then determined that because the plaintiff had intermittent periods in which she was pain free, she could obtain employment which would pay her minimum wage. Subtracting $104,520.00, fifteen years of minimum wage, from $375,000.00, the Court arrived at its lost future income award of $270,480.00.
We are advised by the jurisprudence that calculations of lost future earnings are at best speculative and cannot be made with absolute certainty. Robinson v. Graves, 343 So.2d 147 (La.1977). In rendering a lost income determination, trial courts generally take into consideration the following factors: (1) age; (2) life expectancy; (3) work life expectancy; (4) any discount rate or inflation factor; (5) annual wage rate increases; and (6) probable future earning capacity. Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985); Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La.App. 3rd Cir.1980). Our obligation on appeal is to review the decision of the lower court and refrain from adjusting the award absent concluding that the trial court had abused its broad discretion and was manifestly erroneous. Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La.App. 1st Cir.1982). Subsequent to our review of the record, we do not believe the decision of the Trial Judge is manifestly erroneous.
The plaintiff's economic expert, Donald Woodward Cornwell provided the Trial Court with three sets of figures representing lost future income. Each of the figures represented a different period of time for which the plaintiff might have continued to work. Cornwell's initial present value of future work life expectancy was $189,121.46 and was based on a work life of 7.08 years. This time frame was the average for a worker with King's education, she had completed the 11th grade, and King's age. The second estimation, $216,281.43, projected, using United States Department of Labor statistics, that King would be a member of the labor force for *70 another 11.24 years. This conclusion rested on her age at the time of the accident. The economist's final calculation projected King's lost future wages to age sixty-five, the age at which she would have been eligible for Avon's retirement benefits. This calculation resulted in an estimated lost future income of $283,123.07.
Although the Trial Judge did not rely on the calculations of the expert, particularly excluding discounts for future earnings, consideration of sick leave, employer contributions to savings and other similar considerations, we do not believe that the judgment rendered by the lower court is erroneous. The Trial Judge's award of $270,480.00 is quite close to the third calculation of the economist, $283,123.07. We believe, because of the speculative nature of the calculation involved, that the Trial Court did not abuse its broad discretion.
The appellants' fourth issue on appeal addresses the Trial Court's award of $45,362.57 in lost past income. The appellants contend that this award is excessive because it includes $3,783.00 in domestic household help which was never established at trial. Subsequent to our review of the record, we believe that the appellants are correct and reduce the lower court award for lost past income by $3,783.00 to $41,579.57. The $3,783.00 in domestic help was a figure used by the economist, Cornwell, anticipating King's inability to undertake household tasks herself. We have been unable to find any evidence that King employed any domestic help and, therefore, must amend the judgment accordingly.
The final issues on appeal were raised by American Motorist. American Motorist was awarded $19,875.27 by the lower court. This award consisted of $16,800.00 in weekly worker's compensation benefits and $3,075.27 in medical benefits paid to King or on her behalf up to the time of trial.
The intervenor maintains that because Greig, Waters Oil Tool and State Farm suspensively appealed the lower court judgment it has continued to pay King worker's compensation benefits and that it is now entitled to be reimbursed for those payments. American Motorist suggests that it is entitled to the original judgment of $19,875.27, plus judgment in the amount of all benefits it has paid pending the resolution of this appeal. We believe that American Motorist's subrogation rights entitle it to the judgment it seeks and we will, therefore, amend the lower court decision to reflect the increase. La.R.S. 23:1021, et seq.
American Motorist also maintains that it, similar to King, should receive interest at the legal rate on all amounts it has paid in compensation benefits both prior to trial and pending final judgment. We believe the intervenor is correct and is entitled to the interest it seeks. Interest is, therefore, awarded to American Motorist on all sums paid prior to the intervention from the date of the intervention and on all sums paid subsequently, from the date those sums were paid. Lachney v. Motor Parts and Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir.1978); Willis v. Stauffer Chemical Co., 349 So.2d 1390 (La. App. 3rd Cir.1977), writ denied, 352 So.2d 1047 (La.1977).
For the above and foregoing reasons, the judgment of the District Court in favor of Dorothy Smith King, the plaintiff, and American Motorist Insurance Company, the intervenor, and against Vickie D. Louviere Greig, Waters Oil Tool & Supply, Inc. and State Farm Mutual Automobile Insurance Company, the defendants, is amended in the following respects:
(1) The judgment of the District Court awarding King $45,362.57 in lost past income is reduced to $41,579.57;
(2) The judgment of the District Court awarding American Motorist $19,875.27 is increased to include all worker's compensation benefits paid to or on behalf of King during the pendency of this appeal and all benefits it may pay up to the receipt of judgment by King; and
(3) American Motorist is entitled to interest at the legal rate on all sums paid prior to its intervention, from the date of its intervention, and on all sums paid subsequent *71 to its intervention, from the date those sums were paid.
The judgment in all other respects is affirmed.
All costs of this appeal are assessed: ninety percent to Greig, Waters Oil Tool and State Farm, and ten percent to King.
AMENDED AND AFFIRMED.
NOTES
[1] In Coco, this Court at 330 So.2d 649 (La.App. 3rd Cir. 1976) reduced the Trial Court's award for general damages in which instance Domengeaux, C.J., dissented, concluding that the award should be affirmed. On writs, the Louisiana Supreme Court adopted the rationale of the dissenting opinion and reinstated the Trial Court award. 341 So.2d 332. (La.1976).