538 So.2d 632 (1988)
Gloria V. Normand, Wife of/and Nathan J. NORMAND
v.
HARTFORD FIRE INSURANCE COMPANY, Louisiana Medical Mutual Insurance Company, East Jefferson General Hospital, Pontchartrain Bone and Joint Clinic, Meade Phelps, M.D., and John V. Garoutte, M.D.
No. 88-CA-423.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1988.
Rehearing Denied March 17, 1989.
*633 Harry T. Widmann, New Orleans, for plaintiffs-appellants Gloria V. Normand and Nathan J. Normand.
C.T. Williams, Jr., Clifford J. Enten, Blue, Williams & Buckley, Metairie, for defendants-appellees Dr. Meade Phelps and Louisiana Medical Mut. Ins. Co.
Edward J. Rice, Jr., New Orleans, for defendants-appellees Dr. John V. Garoutte and Louisiana Medical Mut. Ins. Co.
Before CHEHARDY, KLIEBERT and WICKER, JJ.
KLIEBERT, Judge.
Gloria Normand, plaintiff-appellant, sued Dr. Meade Phelps and his medical malpractice insurer, Louisiana Medical Mutual Insurance Company, defendants-appellees, alleging that substandard treatment of a puncture wound exacerbated the injury and contributed to a 15% permanent functional disability of her right wrist.[1] The trial judge found that Dr. Phelps was negligent in his care and treatment of Normand and that Normand had failed to mitigate her damages. Judgment was rendered in Normand's favor for $4,500.00 in general damages. Normand appeals contending the trial judge erred as a matter of law in finding she had a duty to and failed to mitigate her damages. For the reasons assigned, we amend the judgment to increase the award to $15,000.00 and, as amended, affirm.
On September 25, 1982 Normand sought treatment at East Jefferson General Hospital for a puncture wound to the back of her right wrist. Dr. Phelps diagnosed a dorsal wrist laceration with no functional deficit. He sutured a partially cut tendon (the extensor carpi radialis longus or the extensor carpi radialis brevis) and sutured the skin. The hand was placed in a splint and Normand was given a list of general surgeons to consult for further treatment. On September 27, 1982, Normand consulted Dr. John Garoutte, an orthopedic surgeon, complaining of weakness and pain in the wrist. Physical examination revealed weak extension of the wrist which appeared secondary to discomfort in the injured tendon. Dr. Garoutte was unable to determine whether unrepaired lacerations existed in the extensor tendons. The splint was replaced and analgesic and antibiotic medication continued. By October 11th the wound was healed and virtually full motion regained of her wrist extensory. Normand was advised to wear an ace bandage for one week and to return "as needed".
Normand returned on January 10, 1983 complaining of discomfort and weakness in the right wrist, a prominence on the dorsum of the wrist just distal to the laceration, and a swelling over the lateral aspect of the elbow. Dr. Garoutte diagnosed a partial rupture of the extensor carpi radialis longus and the extensor carpi radialis brevis. The former attaches to the third metacarpal in the middle of the hand, straightening the wrist and moving it toward the back of the hand; the latter attached *634 to the second metacarpal, lifting and turning the wrist toward the thumb. The functions overlap.
A regime of conservative treatment which included anti-inflammatory medication, ultrasound therapy, massage and exercise was instituted by Dr. Garoutte. He did not feel surgery to repair the tendons was a viable option because he did not know when the rupture occurred. Moreover, scarring and weakening of the muscle bellies negated regaining sufficient strength in the tendons to justify surgical intervention. When examined on February 7, 1983 Normand's condition was markedly improved; discomfort was much relieved and strength was improving rapidly. Normand failed to keep a subsequent appointment and was not treated further by Dr. Garoutte.
Normand consulted Dr. Dan Riordan, an orthopedic specialist whose sub-specialty is hand surgery, on November 1, 1983. Diagnosis was confirmed as a laceration of the extensor tendons, with a resulting 15% function loss in the wrist. Dr. Riordan recommended a tendon graft whereby a section of the extensor carpi radialis longus would be grafted over the gap in the extensor carpi radialis brevis. In his opinion, functional disability would be reduced to 5%, and the only risks were those attendant to all surgical procedures; i.e., complication from anesthesia and infection. Normand declined the surgical option. She returned two and one-half years later, willing to submit to surgery. However, Dr. Riordan felt surgery was no longer a viable alternative because of atrophy of the muscle bellies. Dr. Riordan did not anticipate any further degeneration of Normand's condition as long as she continued to use the hand.
The supreme court succinctly set forth the jurisprudential principals relating to the duty to mitigate damages in Jacobs v. New Orleans Public Service, Inc., 432 So. 2d 843, 845 (La.1983) as follows:
"[2-5] Our law seeks to fully repair injuries which arise from a legal wrong. However, an accident victim has a duty to exercise reasonable diligence and ordinary care to minimize his damages after the injury has been inflicted. Pisciotta v. Allstate Ins. Co., 385 So.2d 1176 (La. 1979) (amended on rehearing); Unverzagt v. Young Builders, Inc., 215 So.2d 823, 252 La. 1091 (1968); Donovan v. New Orleans Ry. & Light Co., 61 So. 216, 132 La. 239 (1913); Reeves v. Louisiana & Arkansas Ry. Co., 304 So.2d 370 (La.App. 1st Cir.1974); Riley v. Frantz, 253 So.2d 237 (La.App. 4th Cir.1971); Welch v. Ratts, 235 So.2d 422 (La.App. 2d Cir.1970); McCormick, Damages, § 33 (1935). He need not make extraordinary or impractical efforts, but he must undertake those which would be pursued by a man of ordinary prudence under the circumstances. Id. Thus, his recovery will not be limited because of a refusal to undergo medical treatment that holds little promise for successful recovery. Merrell v. State, Through Dept. of Transp., 415 So.2d 660 (La.App. 3d Cir. 1982). The expense and inconvenience of treatment are also proper considerations in determining the reasonableness of a person's refusal to submit to treatment. Andrus v. Security Ins. Co., 161 So.2d 113 (La.App. 3d Cir.1964), writ denied, 163 So.2d 358, 246 La. 81 (1964). Moreover, an unreasonable refusal of medical treatment which does not aggravate his injury will not restrict a victim's recovery. Joiner v. Texas & Pac. Ry. Co., 55 So. 670, 128 La. 1050 (1911); Merrell v. State, Through Dept. of Transp., supra. The tortfeasor has the burden of showing both the unreasonableness of the victim's refusal of treatment and the consequent aggravation of the injury. Glazer v. Glazer, 278 F.Supp. 476 (D.C.La.1968); Reeves v. Travelers Ins. Co., 329 So.2d 876 (La.App. 2d Cir.1976); Desselle v. Wilson, 200 So.2d 693 (La.App. 3rd Cir. 1967); Roy v. Robin, 173 So.2d 222 (La. App. 3rd Cir.1965), writ denied 175 So.2d 110, 247 La. 877 (1965)."
We find no justification in the record for the trial judge's determination that Normand failed to mitigate damages. Although the trial judge did not enunciate what actions by Normand led him to conclude she failed to mitigate damages, the *635 only possible grounds lie in Normand's decision not to submit to surgery as recommended by Dr. Riordan. However, Dr. Garoutte had previously informed Normand that surgery was not a viable option in terms of benefit versus risk. Dr. Garoutte had also informed Normand that any delay in surgery would not result in further degeneration of the wrist in the interim. Under the circumstances, Normand's refusal to submit to surgery was not shown by Dr. Phelps to have been unreasonable. Thus, in our view the trial court erred in finding that Normand failed to mitigate her damages.
Therefore, we turn to the issue of quantum. Since the trial court did not compute damages based upon the full injury before ascribing a failure to mitigate, his award of damages was inadequate. Hence, this court will fix damages on the basis of an independent evaluation of the record. See Rodriguez v. Traylor, 481 So.2d 1017 (La. 1986); Giles Lafayette v. State Farm Mut. Auto. Ins., 467 So.2d 1309 (3rd Cir.1985) writ not considered 472 So.2d 911 (La.1985).
Normand presented little testimony regarding pain and suffering other than the pain from the initial injury. Dr. Garouette's progress notes refer to Normand's complaints as of "discomfort" which was much relieved by ultrasound. Normand's sporadic contact with doctors after the initial treatment phase belie any contention by Normand that she suffered substantial pain. The residual functional deficit from the injury amounts to difficulty in lifting objects when the thumb and little finger are held on a vertical plane. Normand finds it difficult to scrub stovetops and stir food, and she has abandoned bowling and tennis as hobbies. Given the fact that the exacerbation of the injury caused, at best, 10% of the 15% permanent functional deficit, we believe a general damage award of $15,000.00 is fair and warranted.
Accordingly, we amend the judgment of the trial court to increase the award to Normand to $15,000.00. As amended, the judgment is affirmed. All costs of the appeal are cast against the appellee.
AMENDED TO INCREASE AWARD AND, AS AMENDED, AFFIRMED.
NOTES
[1] Other named defendants were dismissed on plaintiff's motion and on a motion for a directed verdict. They not before the court on appeal.