580 So.2d 1053 (1991)
Ronald HALE, Plaintiff-1st Appellant,
National Union Fire Insurance Co., Intervenor-2nd Appellant,
v.
AETNA LIFE AND CASUALTY INSURANCE COMPANY, et al., Defendants-Appellees.
No. 89-1288.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
*1054 Raleigh Newman, Lake Charles, for plaintiff-appellant.
Allen, Gooch, Bourgeois, Breaux, Robinson & Theunissen, John H. Hughes, Lafayette, for defendant-appellantNat. Union.
Raggio, Cappel, Stephen A. Berniard, Lake Charles, for defendant-appelleeAetna Life and Cas.
McGlinchey, Stafford, Cellini & Lang, C.G. Norwood, New Orleans, for defendant-appelleeCaterpillar.
Before FORET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is an appeal by the plaintiff, Ronald Hale, and his employer's worker's compensation carrier, National Union Fire Insurance Company (National Union), from the trial court's judgment in a personal injury suit. The plaintiff and National Union both appeal urging multiple assignments of error. We increase the award. Otherwise, we affirm.
Hale, a cross-country truck driver, suffered a crushing injury to the front part of his right foot, requiring the partial amputation of his great toe, and causing permanent disability. The accident was caused when a forklift, loading plastic on Hale's eighteen wheeler, backed over Hale's foot. By the time of trial, Hale's worker's compensation carrier had paid $7,151.99 in rehabilitation expenses, $15,088.01 in medical expenses, and $50,511.00 in weekly benefits. Hale sued the employer of the forklift operator, as a third party tortfeasor, for general damages, past lost wages, and future loss of earning capacity. National Union intervened for reimbursement of benefits that it had paid.
The trial judge awarded $50,000 in general damages, $44,000 for past lost wages, *1055 $15,088.01 for past medical expenses, and $7,151.99 for rehabilitation expenses. The trial judge then reduced all awards by 70%, finding this to be the degree of plaintiff's comparative negligence. Applying the reduction, the trial judge rendered judgment for Hale in the amount of $15,000 and for National Union in the amount of $19,872.
Hale's appeal raises two assignments of error, dealing with apportionment of fault and insufficiency of the awards. The intervenor raises the same assignments, additionally arguing that its recovery should not be reduced by the plaintiff's fault.
On the subject of apportionment of fault, we find no clear error in the trial court's decision. The judge found that the forklift operator was at fault in backing into Hale without looking to see where he was going or not seeing what he should have seen. The greater fault, however, according to the judge, lay with Hale, because he had been warned three times not to stand in the place of danger where he was standing when his foot was run over. We have studied the testimony. Applying settled standards of appellate review, we will not change this factual determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
We find error, however, in the trial court's award for loss of past wages, and in the failure to award any damages for future loss of earning capacity.

LOSS OF WAGES AND EARNING CAPACITY
The accident happened on December 12, 1984. Hale was then 31 years old. All he had ever done was drive cross-country trucks. Even his military service consisted of truck driving. He had a high school education only.
The case did not go to trial until February 1989, about four years after the accident. During this interval Hale drew worker's compensation benefits. It was stipulated that his employer spent $7,151.99 in rehabilitation expenses. There was no evidence that Hale ever declined to participate in the rehabilitation efforts. The only evidence on the subject indicates that he cooperated fully.
He agreed to try to return to driving with special apparatuses, and the compensation carrier was willing to furnish the truck with these apparatuses. However, the Department of Transportation would not approve them.
From May 3, 1988, to September 17, 1988, Hale tried to get back to driving eighteen wheelers, working for Scheduled Truckways, Inc., for that period of time and earning $8,564.78. He had to stop, however, because his foot was swelling and it had to be put back into a cast.
His inability to drive an eighteen wheeler or do other heavy work was established, without any contradiction, by all of the medical evidence in the case. Only two doctors testified, Dr. C.T. Morgan and Dr. Carol T. Moore. Dr. Morgan was a general physician who did preemployment physicals and evaluations for the Department of Transportation and Development for approximately thirty years. After examining plaintiff to determine his functional capacity he found that plaintiff suffered a permanent disability preventing him from driving a truck. He testified that, although plaintiff could never return to his former job, he could do something lighter that did not require the use of his feet, standing or walking.
Dr. Moore, an orthopedic surgeon, after seeing the plaintiff eight times, testified that the plaintiff was not totally disabled, but that he would have to find an occupation other than truck driving and one that would not require the use of his foot.
The trial judge gave written reasons for judgment. The court explained the amounts of its awards with the following two sentences:
On the issue of damages, it is clear that plaintiff had painful and debilitating injuries. Yet, it is equally clear that plaintiff made no genuine effort to minimize or mitigate his damages.
Translating this finding into figures, the trial judge gave $44,000 in past lost wages, and no award for future lost wages.
*1056 The failure to mitigate damages was apparently based upon admissions by the plaintiff during his testimony at the trial that following his discovery that his condition would be permanent, he did not try to better his education, or obtain other employment skills, although there were technical schools and community colleges available in the area where he resided. The plaintiff explained that he was unable to go to college or retrain himself because of a lack of financial means. Appellee argues on appeal, in support of the trial court's conclusion, that the plaintiff's worker's compensation benefits provided sufficient financial means.
Since the trial judge gave no award at all for loss of future earning capacity, it is apparent that the court believed that the plaintiff could earn as much in the future as he was earning before his injury. There is no evidence in this record to support that finding. The only evidence on the subject was that of Dr. Charles Bettinger, an economist, and the testimony of the two doctors. The doctors testified that plaintiff could do only sedentary work, which did not entail a long period of walking or standing, such as administrative, or desk or clerical type jobs. Dr. Bettinger said that a cross-country truck driver could earn $12.00 an hour at the time of plaintiff's injury while the jobs that he could do after the accident as described by the doctors would pay only $4.75 an hour.
The trial judge obviously believed that the plaintiff's failure to regain his pre-accident earning capacity during the four years preceding trial was a failure to mitigate his damages. We have been cited no case and have been unable to find one, that says that an individual fails to mitigate his damages if he does not go to college or otherwise retrain himself, and thereby acquire the capability of earning the same income he enjoyed before suffering an accident which rendered him incapable of returning to his former employment.
The rules in this state regarding the doctrine of mitigation of damages are clear. One of the rules is that the burden of proving that a plaintiff unreasonably failed to mitigate damages is on the tortfeasor. Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843 (La.1983). In the present case the tortfeasor neither pleaded nor proved a failure to mitigate. The record is devoid of any evidence establishing this defense. The tortfeasor called only three witnesses: Dana Chapman, a shipping clerk at American Polymers, who testified about the loading tally on the day of the accident; Darren Duplechain, who drove the forklift; and Edward Bertrand, a witness to the accident.
We will fix the amount proved for future loss of earning capacity. Since the trial court made no award at all, there is nothing for us to review. Accordingly, we will make an independent determination based on the record. Normand v. Hartford Fire Insurance Co., 538 So.2d 632 (La.App. 5th Cir.1988).
The evidence is uncontradicted. Dr. Bettinger testified that plaintiff had a work life expectancy of 24.8 years at the time of trial. Using a base of $1,800 monthly for a truck driver (the national average was $2,400-$2,500 monthly), he determined that the plaintiff's future loss of earnings amounted to a total of $503,233 without considering the minimum of 15% for fringe benefits. He calculated that if plaintiff would return to full time entry level employment at $4.75 an hour, his future lost wages would total $273,051.
The record supports a finding that the plaintiff could reasonably be expected to return to employment at $4.75 an hour after the trial. We find that the record establishes a future loss of earnings in the amount of $273,051.
Turning now to the subject of the inadequacy of the award of $44,000 for past loss of wages, we note from the record that Dr. Bettinger calculated past earning loss at $80,386. This took into consideration the sum of $8,564.78 that plaintiff earned in 1988 when he attempted, unsuccessfully, to return to driving an eighteen wheeler. The only testimony on the subject of his past earnings was the testimony of Dr. Bettinger. The trial *1057 judge awarded, without explanation, only $44,000. The failure to award the difference between $80,386 and $44,000 was presumably due to a finding that there was again a failure to mitigate. It was the defendant's burden of proof to show that plaintiff could work, that jobs were available, and that plaintiff's refusal to work was unreasonable during this period of time. No proof at all was produced by the tortfeasor concerning these elements. To the contrary, it was stipulated that the worker's compensation carrier spent over $7,000 during that time for plaintiff's rehabilitation. The nature of the rehabilitation program was not explainedonly the amount expended. It would be inappropriate for us to speculate as to what these rehabilitative efforts were, but we can assume that the expense reflects at the very least the plaintiff's willingness to cooperate in his rehabilitation. The plaintiff testified that he had been unable to get a job. We find that there was no evidence in this record to justify the denial of plaintiff's proven loss of wages prior to trial, and it was clear error for the trial court to have reduced the award below that which the uncontradicted testimony establishes was the actual loss. For these reasons we recognize a past loss of wages in the amount of $80,386.

WORKER'S COMPENSATION INTERVENTION ISSUES
The remaining issues on appeal were raised by the worker's compensation intervenor. National Union was awarded $19,872 by the trial court. This award consisted of $44,000 in past lost wages, $15,088.01 in past medical expenses, and $7,151.99 in rehabilitation expenses for a total of $66,240 which was then reduced by plaintiff's 70% of fault.
National Union maintains that the trial court erred in reducing its recovery by the percentage of fault assigned to the plaintiff. In Succession of Theriot v. Southern Pacific Transportation, 560 So.2d 861 (La.App. 3rd Cir.1990), writ denied 565 So.2d 451 (La.1990), we held that the worker's compensation reimbursement claim is to be reduced by the percentage of fault attributable to the employee. The trial court did not err in this regard.
National Union further argues that it is entitled to a judgment directly against the defendants for all amounts not recoverable from the plaintiff's award. This argument is moot now that we have found plaintiff is entitled to an award of $80,386 in past lost wages. National Union is entitled to recover the full amount of worker's compensation benefits paid to plaintiff which totals $50,511, reduced by plaintiff's 70% of fault for a recovery of $15,153.30.
National Union's last assignment of error, argues that it is entitled to recover the benefits it paid to and on behalf of plaintiff between the date of trial and the resolution of this appeal. We agree, and amend the judgment to reflect the increase. King v. Louviere, 524 So.2d 65 (La.App. 3rd Cir.1988), writs granted, 530 So.2d 554 affirmed, 543 So.2d 1327 (La.1989).
For the above and foregoing reasons the judgment in favor of Ronald Hale, the plaintiff, and National Union Fire Insurance Company, the intervenor, and against the defendants, Darren Duplechain, Aetna Life and Casualty Company, and American Polymers, Inc., is amended in the following respects:
(1) The trial court judgment is amended to recognize that plaintiff proved past lost earnings in the amount of $80,386, resulting in an award of $8,962.50 to plaintiff after the award is reduced by his 70% of fault and benefits paid by National Union;
(2) The trial court judgment is amended to recognize that plaintiff proved future lost earnings in the amount of $273,051, resulting in an award of $81,915.30 to plaintiff after the award is reduced by his 70% of fault;
(3) The trial court judgment awarding National Union $19,872 is increased to $21,825.30 for compensation benefits paid and is increased further to include worker's compensation benefits paid to or on behalf of plaintiff during the pendency of this appeal, and all benefits it may pay up to the receipt of judgment by plaintiff.
*1058 The judgment in all other respects is affirmed.
Costs of appeal will be borne by defendant, Aetna Life and Casualty Insurance Company.
AMENDED AND AFFIRMED.