JiDOUCET, Chief Judge.
Plaintiff, Jerry G. Olivier, appeals a judgment of the trial court arguing that the jury erred in finding him 30% at fault in causing his own damages, in failing to award general damages after awarding medical expenses and, in failing to award him lost wages. We reverse that portion of the judgment which rejected plaintiffs general damage claim and in all other aspects affirm the judgment of the trial court.
FACTS
This case arises out of a two vehicle accident which happened on Pinhook Road near Bendel Road in the city of Lafayette on April 23, 1991. Defendant, Keith Pearson, who was traveling toward the Oil Center, was in the turning lane attempting to turn left into Dave’s Shell Station. Plaintiff, Jerry Olivier was traveling toward the river, on Pinhook, in the left or inside lane.
laAs Pearson began to make his turn, he saw Olivier’s pick-up truck approaching and stopped. Apparently Pearson’s auto encroached 2 to 3 feet into plaintiffs lane of travel. Pearson stated that no other vehicles were approaching at the time, and he was sure plaintiff could easily avoid a collision. Olivier maintains that when he saw Pearson’s car, he immediately applied his brakes, but was unable to stop before the two vehicles collided. Plaintiff further stated that he thought he remembered a white van in the right lane, but was not sure because things happened so fast.
The case was tried to a jury, which found Pearson 70% at fault and Olivier 30% at fault in causing the accident. The jury awarded Olivier damages for past medical expenses, but made no award for pain and suffering or lost wages. Plaintiff appeals.
LAW AND DISCUSSION
There are three issues raised by plaintiff in the case: 1) the extent of his injuries; i.e., his general damages; 2) the amount of lost wages, if any; and 3) the jury’s allocation of 30% fault to him.
Initially, we observe that it is clear error for a jury to award medicals, without awarding damages for pain and suffering. See Bowers v. Viator, 625 So.2d 355 (La.App. 3 Cir.1993), writ denied, 633 So.2d 171 (La. 1994). Therefore, this court must make a de novo review of the record and decide on an appropriate award.
Plaintiff has an inherited, congenital low back problem: Spondyloepiphyseal Dys-plasia (SED). He also sustained a prior back injury in an accident in June 1981. Following that accident he consulted Dr. Charles Olivier, who became plaintiffs primary treating physician through June 1991. X-rays taken in June 1991 showed “... severe and advanced ... arthritis and aging and degenerative changes ... unusual and excessive for a man 33 years old.” An MRI showed two herniated discs in the low back, two fused vertebrae in the neck (an apparent birth defect) and advanced 13arthritic changes in the lower part of the neck. In the accident at issue, plaintiff suffered only a herniated disc at C-5/6. Medical testimony appears to be inconsistent as to whether the accident aggravated plaintiffs SED. The most noteworthy fact in this case is that after being sent to Dr. Shepherd for an IME, plaintiff engaged Dr. Shepherd as his treating physician. Apparently, this decision was prompted by two things: 1) Dr. Olivier’s refusal to include the diagnosis of disc herniation on some disability forms (as established by Dr. Shepherd’s letter to plaintiffs attorney dated January 9, 1992); and 2) by Dr. Olivier’s finding of no aggravation of plaintiffs SED following the accident. Plaintiff does not now appear to be a candidate for *499 surgery — Dr. Shepherd opined that the risks outweigh the possible benefits. However, we note that in May 1982, Dr. Olivier opined that Mr. Olivier would probably need surgery in 10 to 15 years because of his continuing deterioration in connection with his SED. Dr. Olivier’s testimony and records covering the years between 1981 and 1991 confirm that Mr. Olivier’s condition did slowly worsen.
Upon reading the testimony of Mr. Olivier, it is not difficult to see why the jury in this case refused to award general damages. Mr. Olivier’s testimony lacks credibility, to say the least. He continually contradicts himself and in many instances when answering questions that would obviously be detrimental, he claims he does not remember the answer. For example, he testified that he forgot he was in what he described, to Dr. Olivier, his doctor at the time, as a serious automobile accident in 1981. He also forgot that he had complained to Dr. Olivier of back and leg pain as early as 1981, long before the accident at issue.
As far as his pain and suffering are concerned, he claims to have almost unbearable pain; however, the record of his visits to his current treating physician reveals gaps in treatment: following the accident he had more or less regular doctor Uvisits through October 1991. He then saw no physicians until he paid two visits to Dr. Shepherd in January 1992. Between January 1992 and February 1998, he sought no medical treatment. Beginning in February 1993, he saw Dr. Shepherd once a month through August 1993. Between August 1993 and the beginning of the trial of this matter in late June 1994, he had only one visit to Dr. Shepherd.
His medical records also show that he has consistently refused to have a myelogram, has not followed Dr. Shepherd’s advice to lose weight and join a health club, has refused a chymopapain injection and has refused epidural injections of anti-inflammatory medication which Dr. Shepherd opined could only help and in no way adversely affect him. Those, clearly, do not appear to be the actions which a person in severe pain would take. Further, plaintiff testified that he has, for some time, been able to control his pain by taking, on the average, less than one Anaprox (a nonsteroidal anti-inflammatory) tablet per day. This, likewise, does not support his alleged constant and severe pain.
The medical testimony concerning the relationship between the accident and Mr. Olivier’s current medical problems, i.e., the ruptured disc in the neck and the two problem discs in the lower back, does not establish that all are related to the accident. While all of the doctors who treated him agree that the ruptured cervical disc is probably due to the accident, the same cannot be said concerning the discs in the low back area. Dr. Olivier flatly refused to relate plaintiffs low back problems to the accident, an action which prompted plaintiff to change treating physicians. Dr. Shepherd stated that “... I can only say that it’s possible it could be related to the accident. It’s possible it could be related to the — his disease only. And I just don’t have enough information to say one way or the other with any certainty.” Dr. Shepherd also stated that the degenerative changes in Mr. Olivier’s spine were not ^related to the accident and that he would have probably classified the plaintiff as “disabled” before his accident.
While lay testimony established that plaintiff was quite active, hunting and camping, before the accident, and that he has allegedly been unable to pursue those endeavors since, plaintiff admits that he has been camping, fishing and has gone to the rifle range with his nephew since the accident. Plaintiff relies heavily on testimony concerning five hunting trips to Michigan in the years immediately preceding the accident. Those trips were to a rustic log cabin without utilities, and required climbing ridges and negotiating swampy land, the type of rugged activities his doctor had advised plaintiff to restrict because of his medical problems.
In any event, a fact finder’s refusal to award general damages for pain and suffering after awarding special damages for medical expenses is an error of law. Martin v. Francis, 600 So.2d 1382 (La.App. 1 Cir.), unit denied, 606 So.2d 541 (La.1992).
Based upon plaintiffs medicals and the lay testimony concerning his physical limitations, *500 we find that clearly there is much doubt as to the degree of pain plaintiff is suffering and what percentage of that pain is attributable to the accident at issue. We find plaintiff suffered a ruptured cervical disc and aggravation of his pre-existing SED; therefore, we find an award of $80,000 to be appropriate. See Thibodeaux v. Stivers, 609 So.2d 291 (La.App. 3 Cir.1992), writ not considered, 613 So.2d 966 (La.1993), a general damage award of $80,000 was made to a plaintiff who sustained aggravation to his pre-existing low back injury and new injury to his neck; Touchard v. Williams, 606 So.2d 927 (La. App. 3 Cir.), writ granted, 609 So.2d 239 (La.1992), affirmed in part, reversed in part, 617 So.2d 885 (La.1993), where $100,000 was awarded to a plaintiff who suffered an injury at L-5/S-1 which required surgery, |6injury to the cervical spine, muscle spasms and contusions over most of her body; Simmons v. Calcasieu Community Center Playground, Dist. No. ¾ 524 So.2d 775 (La.App. 3 Cir. 1988), a woman seven months pregnant who suffered a spinal fracture, brain concussion and abrasions was awarded $100,000; and King v. Louviere, 524 So.2d 65 (La.App. 3 Cir.), writ granted, 530 So.2d 554 (La.1988), affirmed, 543 So.2d 1327 (La.1989), in which $100,000 in general damages was awarded to a plaintiff whose pre-existing cervical disc disease was aggravated to such an extent as to force her to chose between limiting her activities or undergoing a second fusion operation with a limited chance of success and who had to give up a successful career as an Avon representative, and who endured pain, bouts of depression, anxiety, lack of energy and inability to sleep.
Turning to the question of lost wages, we find the evidence introduced at trial shows plaintiffs work history (as a court reporter) to be “spotty” at best. The record contains evidence and testimony which establishes that plaintiff never was employed as a full time court reporter, but that he only did relief work in the Fifteenth Judicial District Court area. Also, Mr. Olivier just could not remember if he had worked as a court reporter in some years, even though his income tax forms from those years clearly showed that he had not done so. It was further established that plaintiff does not now possess a license as a court reporter, having failed to take advantage of a grandfather clause which would have granted licensure without taking the currently required exam. Accordingly, it appears that it was inaction by the plaintiff, rather than injuries sustained in the accident, which resulted in his inability to continue his career as a court reporter. This being the case, we find that plaintiff failed to prove he was entitled to any award for lost wages.
RBased upon the facts surrounding the accident, the jury found 30% fault on the part of the plaintiff. We find no clear error in the jury assessing 30% fault to plaintiff. First, plaintiffs testimony concerning the accident lacks credibility. Plaintiff testified on direct examination that he was traveling at 35 mph and there was a white van in the right hand lane which prevented him from changing lanes to avoid the accident. However, on cross examination, he admitted that he really wasn’t sure how fast he was going, as he was not sure whether his speedometer was working on the day of the accident. He further admitted that, even though he thought there was a van to his right rear, he really wasn’t sure of that either.
Further, it is possible that the jury based their determination of plaintiffs contributory fault upon the testimony of defendant’s accident reconstruction expert, Dr. Olin K. Dart, Jr. Dr. Dart testified that at 35 mph, the speed at which plaintiff claimed to be traveling, it would take 140 feet to bring his vehicle to a complete stop. Plaintiff testified that he was less than 140 feet from defendant’s car when he first observed the vehicle. Hence, according to his own testimony, he was traveling at a speed which caused his stopping distance to exceed the limit of his vision, a fact which reasonable men or women could conclude contributed to the accident. Additionally, the police report of the accident recorded no skid marks at the scene. This does not support plaintiffs testimony that, in an attempt to avoid a collision, he slammed on his brakes so hard that his wheels screeched.
Accordingly, we reverse that portion of the judgment which rejected Mr. Olivier’s claim *501 for damages for pain and suffering and award Jerry Olivier a general damage award of $80,000, subject to reduction by his percentage of fault in the accident; in all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to appellant and appellees.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
KNOLL, J., concurs in part and dissents in part, for reasons assigned.
LABORDE, J., concurs in part and dissents in part, for reasons assigned.