244 So.2d 671 (1971)
George L. METZGER, Jr.
v.
Lee SCOTT, Jr.
No. 4272.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1971.
*672 Bienvenu & Culver, Leonard A. Young, New Orleans, for plaintiff-appellant.
Sanford Krasnoff, James C. Witcher, III, New Orleans, for defendant-appellee.
Before REDMANN, STOULIG, and BOUTALL, JJ.
BOUTALL, Judge.
This is a devolutive appeal from a judgment of the Civil District Court for the Parish of Orleans. The suit seeks to recover for property damage and personal injuries arising out of an intersectional collision between two vehicles. Judgment was rendered in favor of the defendant, dismissing plaintiff's suit, and from this adverse judgment, plaintiff appeals. The issue upon which the appeal is based is the validity of the defense of unexpected brake failure of the defendant's automobile.
The certain facts are these. On January 15, 1968, plaintiff George L. Metzger was operating his automobile in a downtown direction on Camp Street in the City of New Orleans. He was in the process of crossing Canal Street at Camp Street on a green light. He cleared two lanes of traffic and was almost clear of the third lane when his vehicle was suddenly struck on its left rear side by an automobile owned and operated by the defendant, Lee Scott, Jr. Immediately prior to the collision, Lee Scott, Jr., was operating his automobile on Canal Street driving towards the Mississippi River. The vehicles in front of Scott had stopped in obedience to the red light. These vehicles occupied the two lanes to the right leaving the left lane, that closest to the neutral ground, open. Scott proceeded through this left lane against the signal light, blew his horn and proceeded into the intersection, striking plaintiff's vehicle.
The defendant contends that his brakes unexpectedly failed and that this caused him to run through the red light. He testified that he had left home sometime previous to the collision and had driven a considerable distance, using his brakes a number of times successfully. As he approached the intersection of Camp at Canal Streets, he was driving in the middle lane of Canal Street. When the vehicles ahead of him stopped in response to the red signal light, he applied his brakes to stop and "they just went down to the floor". He said that he "stomped them" several times and then swerved to the left lane to avoid striking the vehicle stopped in front of him, and did everything he could to avoid the collision with plaintiff's vehicle in the intersection. He testified (TR-23): "I swerved over into the left hand lane and tried to turn down Camp Street with the traffic as he was coming across but the light post sitting there (sic) and I just cut between him and the post and that is when we come in together." At the same time, he was quite busy for he also testified (TR-24): "I had to hold the emergency brake and my hand across the wheel and the impact was made."
In support of his position the defendant produced a mechanic, Mr. Woodrow Carter, who testified that a month or so prior to the accident, the exact time is not certain, he repaired defendant's brakes. Scott's vehicle also carried a current brake tag. Additionally, the police report was offered in evidence, and it states: "Brakes on #22 (defendant's vehicle) checked and when applied pedal would go to the floor without holding." The trial judge considering these facts enumerated above, and apparently believing Scott's testimony concluded "that the defendant met all of the requirements outlined in the case of Littleton v. Arrow Food Distributor, Inc., 224 So.2d 131." (La.App. 3rd Cir. 1969).
Both parties to this suit have urged to this court that the Littleton Case, supra, is support for their opposite positions. That case was decided by the Court of Appeal, Third Circuit, based upon the rulings in a prior line of cases culminating in the case of Cartwright v. Firemen's Insurance Company of Newark, New Jersey, 254 La. 330, *673 223 So.2d 822 (1969); Delahoussaye v. State Farm Mutual Automobile Insurance Company, 202 So.2d 287 (La.App. 4th Cir. 1967).
In the Delahoussaye Case, supra, the court relieved the defendant driver of legal liability for the collision on the ground of a latent defect in the brakes of his truck. It held that the proof on that point was "sufficient to exclude any other reasonable hypothesis as to the cause of the accident." The court then enumerated its findings as follows:
"In the instant case we find no reason not to give full effect to the defense. The brakes had been operating properly up to the time of the accident and Mr. Connolly did not know or have any reason to know of any defect. The accident was due solely to the defective brakes. The defect was such that it could not have been discovered by any reasonable inspection of the system. The brakes had been inspected by a qualified mechanic prior to the accident and also immediately after the accident, and the mechanic's testimony shows that the only thing wrong was the pin hole in the high pressure line which was entirely hidden behind the supporting bracket. Finally it was shown that defendant attempted to apply his emergency brake.
We are of the opinion that the defendant has completely fulfilled the requirements shown by the jurisprudence to be necessary to a successful defense based on a latent defect in an automobile."
The Supreme Court of Louisiana denied certiorari in the Delahoussaye Case, 251 La. 671, 205 So.2d 440 (1968), but issued certiorari in the case of Cartwright v. Firemen's Ins. Co. of Newark, N. J., supra, largely because of the especially concurring opinion of one of the judges of the Court of Appeal, 213 So.2d 154, 156 (La. App. 3rd Cir. 1968), and in an effort to establish a definitive rule of law to govern the disposition of similar cases. It held that:
"There is little doubt that in this jurisdiction, in suits sounding in tort, there can be no recovery without fault except in those instances where strict liability is provided by legislative action."
It then found that there was no legislative action or legislative intent to change this principle of law in cases of collision caused by latent brake defects in a factual situation remarkably similar to the Delahoussaye case, supra. In so doing, the court obviously rejected the reasoning of our learned brother of the Third Circuit, and it would thus be of no benefit to advance a similar proposition in this case. Suffice it to say that we must follow the principle enounced. However, the rule must be cautiously and strictly applied, and it is the application of it which causes great concern lest it be abused and cause injustice to those persons who, completely without fault, must now bear the burden of suffering injury at the hands of another without compensation.
Under the principle of the Cartwright Case the courts are required to determine the question of fault on the part of the defendant driver before liability can attach. As in any other case, the plaintiff has the burden of proving negligence by a preponderance of the evidence. The evidence in this case clearly shows that the defendant driver drove into the intersection against a red traffic light and crashed into plaintiff's vehicle. The defendant not only admits this, but he admits that his brakes were not operable. We are of the opinion that these facts are sufficient to satisfy the burden of proof imposed on the plaintiff, and that the burden now shifts to the defendant driver to justify his actions.
His burden is a rather heavy one. We have already discussed the burden imposed in the Delahoussaye Case, supra. Additionally, the court in the case of Littleton v. Arrow Food Distributor, Inc., supra, had this to say:
"Applicable here is the rule that in order for latent defects to constitute a valid defense, the proof must be so strong that *674 it excludes any other reasonable hypothesis with reference to the cause of the accident except that it resulted solely from the alleged defects, and it must establish that the driver was not aware of the defects and that the defects could not reasonably have been discovered and remedied by a proper inspection. Furthermore, the failure of a motorist to use his emergency brake constitutes negligence and a cause of the accident, if there is a reasonable opportunity to do so effectively after the ordinary foot brakes fail. Cartwright v. Firemen's Ins. Co. of Newark, N. J., 213 So.2d 154 (La.App. 3rd Cir., 1968); Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4th Cir., 1967); Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3rd Cir., 1966)."
The trial judge found that the defendant driver had fulfilled all of these requirements and rendered judgment accordingly. It is our opinion that the defendant has failed to meet these essential requisites. An examination of the record reveals no evidence whatsoever as to the cause of the brake failure. The testimony of the defendant is simply that the brakes went to the floorboards without holding and that the emergency brakes only slowed him down a little. No examination as to the cause of brake failure was made, nor was any attempt made to repair the brake system. The vehicle was sold sometime later and, of course, was not available for examination thereafter. In fact, the only corroboration of brake failure at all was the police officer's statement that the brake pedal went to the floor after the accident. In each of those cases wherein the defendant was absolved of fault, there was noted a trial of brake fluid in the vehicle's path prior to the collision, and inspection by a mechanic thereafter to prove the sudden failure due to a latent defect. See: Cartwright v. Firemen's Insurance Co. of Newark, N. J., supra; and Delahoussaye v. State Farm Mutual Automobile Insurance Co., supra; and Mallett v. State Farm Mutual Automobile Insurance Co., 240 So.2d 413 (La.App. 3rd Cir. 1970).
The court in Littleton v. Arrow Food Distributor, Inc., supra, found error in the judgment of the trial court in concluding that proof of the latent defect was so strong that it excluded any other reasonable hypothesis than that the accident resulted from the latent defect. In that case there was testimony of a mechanic who examined the vehicle involved and proposed a theory as to cause of brake failure but did not disassemble the brake system to see the actual condition thereof. How much weaker is the defense in the instant case where there is no examination or theory!
We further note that there was no corroboration at all of the defendant's statement of failure of the emergency brake. The police officer's statement was silent as to its condition. The cases cited above all hold that there must be application of the emergency brake if there is time. The statutory law in effect at that time, LSA-R.S. 32:341 subd. A (1962), required that defendant's vehicle be equipped with two separate means of applying the brakes. The reason for this rule is obvious. Should one system fail, the other may be used to safely stop the vehicle. See for example, the case of Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3rd Cir. 1966), where examination disclosed that the foot brake was inoperative, but that the emergency brake was in good working order. It is hardly reasonable to suppose that both brake systems could fail at the same time without some prior notice.
We conclude that the defendant driver has failed to prove that there were latent defects which caused his brakes to fail and that, had defects existed, they could not reasonably have been discovered and remedied by proper inspection. It then follows that the sole and proximate cause of the collision was the defendant's failure to stop in obedience to the red traffic light and running into plaintiff's vehicle, casting upon him liability for the resulting damages.
Metzger's special damages consisted of $153.00 in medical expenses, $135.08 in lost *675 wages (including 44 hours lost in going to his doctor's office), and $188.00 for repairs to his automobile. The first two items were stipulated and the third is uncontradicted. The only remaining item of damage is that for Mr. Metzger's pain and suffering incurred in connection with his bodily injury.
Defendant's automobile crashed into the driver's side of Mr. Metzger's vehicle, and Metzger immediately experienced pain. His pain became so severe that he sought medical treatment on the afternoon of the accident. He was first examined by Dr. Cahen, who diagnosed a chest injury and treated it by having the chest strapped and his arm put in a sling. Dr. Cahen's report of March 15, 1968, was stipulated in lieu of his testimony, and demonstrates that plaintiff suffered pain in the left rib cage and bruises of the left thorax and back. Plaintiff was treated by Dr. Cahen for over six weeks, during which time he continued on his medication for pain. He was given heat treatments on each visit to Dr. Cahen. Although plaintiff testified that he only missed two days of work as a result of the accident, he worked in pain and tried to do his regular work as much as possible. The report indicated that the plaintiff was not able to assume regular work until March 15, 1968, some two months after the accident.
Metzger was also examined by Dr. John P. McNulty, at the instance of Dr. Cahen. He was seen by Dr. McNulty on January 15, 1968, and January 24, 1968. It was Dr. McNulty's opinion that Metzger "had mild labile hypertension, which was not directly related to the accident, and was transiently aggravated by the excitement caused by the accident". (Exhibit P-2).
We are of the opinion that an award of $1250.00 for the injuries, pain and suffering would be adequate.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff, George L. Metzger, Jr., and against the defendant, Lee Scott, Jr., for the sum of $1726.08 with legal interest thereon from date of judicial demand until paid, and for all costs of this suit. The costs of this appeal are assessed against defendant-appellee.
Reversed and rendered.