543 So.2d 1327 (1989)
Dorothy S. KING
v.
Vickie D. LOUVIERE, State Farm Mutual Automobile Insurance Company, and Waters Oil Tool and Supply, Inc.
No. 88-C-1340.
Supreme Court of Louisiana.
May 1, 1989.
Alex Lopresto, Roy, Forrest & Lopresto, Lafayette, for applicant.
Joseph Koury, Koury & Koury, William Page, Jr., Jeansonne & Briney, Lafayette, for respondent.
DENNIS, Justice.
In this motor vehicle accident case, a secretary driving her employer's car on a company errand failed to negotiate a curve, entered the adverse traffic lane, and collided with the plaintiff's oncoming vehicle. The secretary claimed that the failure of her brakes caused the accident. The trial court found that the secretary's negligent driving had caused the accident and held the secretary, her employer and the employer's insurer liable. The court of appeal found that the secretary had not been guilty of any negligence contributing to the accident, but that the mishap had been caused exclusively by the failure of her brakes, and that the secretary was strictly liable for the damages because she had the garde of the vehicle at the time of the accident, 524 So.2d 65. We affirm the result. We hold, however, that (1) an employee who has been given possession of her employer's vehicle for the purpose of running an errand, and who has not been assigned any duty to maintain the vehicle, is not the guardian of the vehicle with respect to vices or defects in its brake system; (2) a trespassing motorist who leaves her own lane of travel and collides with a car in its correct lane must show by clear and convincing evidence that her negligence did not contribute to the accident; (3) in order for a latent defect to constitute a valid defense for a driver, when she is *1328 not the owner or the guardian of the vehicle, the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defect; and, (4) the secretary in the present case did not exclude every reasonable hypothesis except her actionable negligence or prove with clear and convincing evidence that her negligence was not a contributing cause of the accident.
On a misty day, Vickie Louviere Greig failed to negotiate a sharp, wet curve in the U.B. Landry Road in Lafayette Parish, and the automobile she was driving crossed the center line and collided with a vehicle driven by Dorothy King in the opposite direction in her correct traffic lane. Mrs. Greig had approached the curve at 30 to 35 MPH although a 15 MPH warning sign had been posted. She testified that her brakes failed to work when she applied them approximately four car lengths from the curve. The investigating officer testified that after the accident he stepped on the brake pedal and it went completely to the floor.
Mrs. Greig, a secretary-receptionist employed by Waters Oil Tool & Supply, Inc., was going to the post office on an errand for her employer at the time of the accident. The automobile she was driving had been owned by her employer for about a month at the time of the accident. Mrs. Greig had driven it only two or three times each week, and she apparently had not been assigned any duty to maintain the vehicle.
Mrs. King, who was injured in the accident, brought suit against Mrs. Greig, her employer and its insurer. The trial court, without elaborating, found that "the proximate cause of this accident was due to the sole negligence of the defendants" and awarded Mrs. King damages against the defendants solidarily. The court of appeal affirmed, holding that no negligence on Mrs. Greig's part had been proven, but that she and the other defendants were solidarily liable because the owner and the driver of an automobile which causes damages to another because of its vice or defect are both custodians or guardians of the vehicle and thus strictly liable for the harm it has caused. We granted certiorari to consider (1) whether Mrs. Greig had the garde of the automobile and should be held strictly liable for damage caused by its defects, and, if not, (2) whether Mrs. Greig should be held liable in negligence because she did not overcome the presumption that her negligence contributed to the accident which arose because she failed to keep the vehicle in its permissible lane of travel or because she invoked the latent brake defect defense.

1. Whether a secretary has the garde of her employer's car during her operation of the vehicle
This court has interpreted La.Civil Code article 2317 as providing that the person who has the garde of a thing shall be strictly liable for damage caused another by the vice or defect of the thing, his legal responsibility being based on the breach of his legal obligation to keep his thing in such condition that it does no damage to others. Loescher v. Parr, 324 So.2d 441, 447-448 (La.1976). In adopting this construction of La.Civil Code article 2317, the court was influenced by the interpretations of the French verbatim counterpart, French Civil Code article 1384(1), reached in France, Belgium and Quebec. Loescher v. Parr, supra, at 448. Although the Loescher court did not expressly make note of the fact, its interpretation closely resembles the Belgian view, which limits the article's application to cases where the accident was due to an inherent vice of the thing in question, and partially rejects the contemporary French position under which the article is capable of being applied to a vast variety of inanimate objects, whether inherently dangerous or not. See 1 Lawson & Markesinis, Tortious Liability For Unintentional Harm In The Common Law and The Civil Law 148-151 (1982); see Malone, Ruminations on Liability for the Acts of Things, 42 La.L.Rev. 979, at 996.
Under La.Civil Code article 2317 the person who has the garde of a thing is he who has the legal duty to prevent its vice or defect from harming another. The determination *1329 of the existence of this duty is made through a process of policy considerations similar to that used in determining other delictual duties. See, e.g., Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La. 1988); PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984); Entrevia v. Hood, 427 So.2d 1146 (La.1983); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Langlois v. Allied Chemical, 258 La. 1067, 249 So.2d 133 (La.1971). To assist the trier of fact in this deliberation this court has set forth several general principles: the liability arises from the guardian's legal relationship to the thing whose defect creates an unreasonable risk of injury to others. Loescher v. Parr, supra, at 446. The garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. Loescher v. Parr, supra, at 449 (quoting Verlander, We Are Responsible ... 2 Tulane Civil Law Forum, No. 2, p. 64 (1974)). The guardian is in a better position than the innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in the thing. Ross v. La Coste de Monterville, 502 So.2d 1026, 1032 (La.1987).
Further guidance may be obtained from doctrine if it is carefully analyzed. For example, this court has observed that, in the actual application of French law, the garde of a thing can sometimes be divided between two persons, that is, between the guardian of the conduct of the object who is presumed to be responsible for damage caused by its behavior and the guardian of its structure who is responsible for damage caused by the object's defects. Ross v. La Coste de Monterville, supra, at 1030. For example, in the case of damage done by a car driven in a parking garage by an attendant, the owner does not have the garde of the behavior of the vehicle after he has transferred the powers of use, direction and control to the garage, but the owner continues to have the garde of his car's structure so as to make him responsible if the accident was caused by its vice or defect. See Ross v. La Coste de Monterville, supra, at 1030-1031 citing French authorities. In view of this doctrine and underlying policy considerations, this court concluded that an owner of a thing who transfers its possession to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. Ross v. La Coste de Monterville, supra, at 1029-1032. It was pointed out, however, that the French doctrine pertaining to the garde of the behavior of a thing is not relevant to a determination of garde under La.Civil Code article 2317 because the Louisiana principle of strict liability is limited to damage resulting from a vice or defect creating an unreasonable risk of harm in the thing. Id. For this reason, a Louisiana jurist seeking guidance from the French commentators must distinguish carefully between discussions of the garde of the structure of the thing, commentary on the garde of behavior of the thing, and discourse on the general concept of garde which includes the garde of both structure and behavior of things in French law. Moreover, astute scholars have observed that, in practice, the French courts actually attribute the garde according to empirical policy considerations such as which party is in a better position to discover the defect or control the thing that caused the harm. 1 Lawson & Markesinis, supra at 156.
In the present case, and in many others, a very important consideration in determining whether a person has the garde of a thing may be found in the policy established by related statutes. The Highway Regulatory Act provides that "[n]o person shall ... knowingly permit any vehicle owned or controlled by him to be driven or moved, on any highway ... in such unsafe condition as to endanger any person or property", or which is not properly equipped as required by law. La.R.S. 32:53. The act further provides that every motor vehicle, when operated upon a highway of this state, shall be equipped with *1330 brakes adequate to control the movement of and to stop and hold such vehicle, and the act establishes brake performance standards. La.R.S. 32:341-346. Finally, the statute imposes criminal penalties for the violation of the provisions. La.R.S. 32:57.
The Highway Regulatory Act, La.R.S. 32:53, thus, under pain of fine and imprisonment, prohibits the owner of a motor vehicle from knowingly permitting its operation with defective brakes on the state highways. The statutory provisions regulating the maintenance and equipment of automobiles constitutes express legislative recognition of the fact that improperly maintained motor vehicles threaten a grave risk of serious bodily harm or death; that the responsibility for minimizing that risk rests primarily with the person who owns the vehicle; and that the discharge of the duty to maintain the safety of his vehicle is of the utmost importance to the public. The statute clearly sets forth this state's policy that a motor vehicle owner is responsible for its care, maintenance and safe operating condition even when it is in the physical custody and control of another person.
Moreover, the compulsory Motor Vehicle Liability Security Act, La.R.S. 32:861 et seq., under pain of suspension of driving privileges, imposes a duty upon the registered owner of a motor vehicle the duty to insure, or otherwise provide security for, himself and anyone responsible for the operation of the vehicle, against liability arising out of "the ownership, operation, maintenance, control, or use upon the highways and roads of the state of such motor vehicle." La.R.S. 32:861(B). These provisions reflect a policy that the owner of a motor vehicle shall have the responsibility of compensating for any damage done to others by his failure to properly maintain the vehicle even if the accident which caused the damage occurs while the vehicle is being operated by another person.
In view of the clear legislative policy and other empirical considerations, we conclude that the owner of an automobile continues to have the garde of it and to be responsible for the damage caused by its vice or defect even while it is in the physical custody or control of another. Moreover, the owner of an automobile, unlike the owner of some other things, has the garde of the vehicle even if the vice or defect causing damage to another arises after the owner transfers physical possession of the car to someone else. Compare Ross v. La Coste de Monterville, supra, at 1030-1031.
The ultimate question in the present case, however, is whether, under the circumstances, the law imposes the duty of garde upon a secretarial employee such as Mrs. Greig, as well as upon her employer, the owner of the vehicle. Although the possibility of a cumulative employee guardianship should not be ruled out entirely, we conclude that in this kind of case the employee's legal relationship with the vehicle is not of such a degree or quality as to create the duty of garde.
A secretarial-receptionist, such as Mrs. Greig, customarily may be required to drive her employer's vehicle in connection with her work, but it would be highly unusual for such an employee to be assigned either the duty or the authority to regularly maintain its brakes or other equipment. Moreover, the evidence does not indicate that Mrs. Greig had been delegated the right or the obligation to perform such maintenance on the vehicle. The record reflects that she was granted only the limited authority to drive the vehicle in order to perform a brief mission for her employer. She did not have the right of direction or control of the vehicle to the extent that she was empowered to maintain its brakes or other structural equipment. Consequently, Mrs. Greig was not in a position to detect, evaluate or remedy any vice or defect in the automobile's brake system.
An argument could be made for the proposition that, when the principal or employer specifically delegates to an employee the personal duty to maintain the employer's vehicle, the employee becomes the guardian of the vehicle cumulatively with the employer. This reasoning is analogous to the criteria for imposing individual liability upon a corporate officer, agent, supervisor, or employee for allegedly causing damage *1331 to another by his negligent breach of his individual employment duty. See Canter v. Koehring Company, 283 So.2d 716 (La. 1973). Accordingly, under this theory, the employee would not be considered a guardian of the vehicle simply because its maintenance fell within his general administrative responsibility, or if the maintenance function had been delegated specifically and personally to a responsible subordinate or subordinates, but only if the employee in question had a personal duty of care as to the maintenance of the structure and equipment of the particular vehicle. See Canter v. Koehring Company, supra, at 721. However, because this is a matter of some complexity, and because Mrs. Greig clearly would not be a guardian even under this suggested scheme, we need not decide in this case whether the duty of garde may be imposed upon an employee with respect to his employer's motor vehicle or set forth definitively any criteria for its imposition.

2. Whether Mrs. Greig carried her burden of proving that her negligence did not contribute to the accident.
It is undisputed that Mrs. Greig was on the wrong side of the road when the accident occurred. Moreover, her only effort to exculpate herself from fault was an attempt to show that the accident was caused by a latent brake defect in the vehicle she was driving. Accordingly, she was under two heavy burdens to show that she was not guilty of any dereliction, however slight, which may have had a causal connection with the accident.
When a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident. Brannon v. Shelter Mutual Ins. Co., 507 So.2d 194 (La.1987); Simon v. Ford Motor Company, 282 So.2d 126, 133 (La.1973) (Tate, J. on rehearing); Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671 (1957).
Furthermore, when such a trespassing motorist attempts to exonerate herself by claiming that a latent defect in her own vehicle caused the accident, she incurs another heavy burden. Louisiana courts have recognized a jurisprudential rule that in order for latent defects to constitute a valid defense, the proof must be so strong that it excludes any other reasonable hypothesis with reference to the cause of the accident except that it resulted solely from the alleged defects, and that it must establish that the driver was not aware of the defects and that the defects could not reasonably have been discovered and remedied by a proper inspection. Brannon v. Shelter Mut. Ins. Co., supra; Simon v. Ford Motor Company, supra; Cartwright v. Firemen's Ins. Co., 254 La. 330, 223 So.2d 822 (La.1969); see Metzger v. Scott, 244 So.2d 671 (4th Cir.1971); Davis v. Logarbo, 346 So.2d 306 (4th Cir.1977); Keck v. Yocum, 250 So.2d 468 (3rd Cir.1971).
The reason for the heavy burden of proof upon a defendant claiming a latent brake defense is that the innocent person injured through the defect cannot reasonably be held to discover pre-accident evidence of the defendants negligence, which is usually within the sole and exclusive knowledge of the defendant. Accordingly, the person claiming such a defense is required to come forward with objective and convincing evidence, other than his own testimony, against which his degree of innocence of fault may be measured. Simon v. Ford Motor Company, supra, at 135.
In a strict liability action under La.Civil Code article 2317 the negligence oriented latent defect burden of proof rule is inapplicable because the guardian's negligence is immaterial to such an action. When the latent defect defense is claimed as a defense to a negligence action by one who is not an owner or guardian of the vehicle, however, the burden of proof rule and the reasons for it are still valid.
Applying these precepts to the present case, we conclude that Mrs. Greig clearly failed to carry her burden of proving the latent defect defense, i.e., that the accident was caused exclusively by a latent defect in her vehicle and that she was not guilty even of slight negligence that in any way contributed to the accident. Immediately *1332 prior to the accident Mrs. Greig was driving 15 to 20 miles per hour in excess of the recommended speed for negotiating the curve. She was driving under misty, hazardous conditions which further reduced the safe speed for the curved roadway. This evidence alone affords a substantial basis for finding that her negligence probably contributed in part to the accident even if her brakes did fail unexpectedly. The evidence as to a latent defect did not exclude the reasonable hypothesis that she could have avoided the accident despite the brake defect if she been driving at a speed safe under the circumstances. The record is devoid of evidence to show that the curve could not have been negotiated safely without adequate brakes if the vehicle had been operated at a speed safe for the conditions. Mrs. Greig failed to present any testimony from an expert or mechanic to explain the mechanisim of the brake failure, or the completeness or suddeness of the failure. Apparently, no such person was ever asked to inspect the brake system to determine the reason for the alleged failure. The vehicle was totally destroyed in another wreck soon after the accident in the present case and was unavailable for helpful inspection at the time of the trial. The only corroboration in the record of Mrs. Greig's testimony that the sudden failure of her brakes was the exclusive cause of the accident was the statement of the investigating officer that after the accident her brake pedal went to the floor when he stepped on it. Under all of the circumstances, Mrs. Greig's evidence is not forceful enough to overcome the reasonable hypothesis that the the brake defect, if any, did not totally eliminate her negligence as one of the contributing causes of the accident.
For the reasons assigned, the judgment of the court of appeal amending and affirming the trial court's judgment is affirmed.
AFFIRMED.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I agree with the majority that Mrs. Greig failed to carry her burden of proving the latent defect defense. She did not exculpate herself of any fault, however slight, contributing to the accident. Hence, she is liable under art. 2315 and her employer and its insurer are liable pursuant to the rule of respondeat superior. Accordingly, we need not have reached the question of whether the owner or guardian of a loaned vehicle is strictly liable under art. 2317. However, even if we were to do so, there is insufficient proof that the brakes were in fact defective and, if so, that they caused the damage. I respectfully concur.