701 So.2d 1375 (1997)
Ernest ALFORD, et al.
v.
HOME INSURANCE COMPANY, et al.
No. 96 CA 2430.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
*1376 Walter Landry Smith, Baton Rouge, for Plaintiff/Appellant Ernest Alford.
W. Evan Plauche, Metairie, for Defendant/Appellee First Fidelity Leasing Group, Inc.
Before LeBLANC and FITZSIMMONS, JJ., and CHIASSON[1], J. Pro Tem.
LeBLANC, Judge.
The issue in this products liability action is whether the titled owner of equipment which is alleged to be defective in design and condition is subject to strict liability under La. C.C. art. 2317, when the ownership of the equipment is predicated on a financed lease pursuant to which only the lessee had actual possession of the leased equipment. The trial court held that the defendant/owner First Fidelity Leasing Group, Inc., (FFLG) did not have the requisite custody or "garde", and granted summary judgment in its favor. Plaintiff appeals.
Plaintiff's cause of action is based on La. C.C. art. 2317:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody. (emphasis added.)
Our courts have analyzed the concept of custody, within the scope of article 2317, in the context of a variety of circumstances; however, the liability of an owner pursuant to a financed lease is res nova.[2]
In Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987), our Supreme Court analyzed the issue of whether the owner of a defective thing, who gratuitously lends the thing to a borrower, continues to have custody for purposes of imposing strict liability. The court concluded that in applying the article, we should afford the same interpretation to custody as given by the French authorities in interpreting the concept of "garde" in the source provision, article 1384(1) of the French Civil Code. The court further concluded that an owner of a thing who transfers its possession, but not its ownership to another, continues to have the "garde" of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. Ross, 502 So.2d at 1032.
In King v. Louviere, 543 So.2d 1327 (La. 1989), the court expounded further on the interpretation of custody under article 2317:
[T]he person who has the garde of a thing is he who has the legal duty to prevent its vice or defect from harming another....
[T]he liability arises from the guardian's legal relationship to the thing whose defect creates an unreasonable risk of injury to others. The garde is the obligation imposed *1377 by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them.
King, 543 So.2d at 1328-29. (citations omitted.) The issue in King was whether a secretary, who was operating her employer's allegedly defective vehicle, had garde of the automobile such that she could be held solidarily liable with the owner of the vehicle. The court concluded that the owner, and not the secretary, was strictly liable for the damages caused by the defective automobile. However, the ruling was based on specific motor vehicle statute violations and the "clear legislative policy and other empirical considerations" applicable to the owner of a defective automobile, who "unlike the owner of some other things, has the garde of the vehicle even if the vice or defect ... arises after the owner transfers physical possession of the car to someone else." King, 543 So.2d at 1330.
Under most circumstances, ownership alone establishes the requisite benefit, control and authority to find garde. However, although ownership establishes the presumption of garde, it is rebuttable by the owner, and it is largely a question of fact. Doughty v. Insured Lloyds Insurance Co., 576 So.2d 461, 464 (La.1991). Custody, distinct from ownership, refers to a person's supervision and control over a thing. The garde is the obligation imposed by law on the proprietor of a thing, or of one who avails himself of it, to prevent it from causing damage to others. The fault of the person thus liable is based upon one's failure to prevent the thing from causing unreasonable injury to others. Baudoin, 93-2084 at 3; 644 So.2d at 801.
In support of its motion for summary judgment, FFLG does not deny it is the registered owner of the equipment at issue, but maintains that its ownership arose out of a "financed lease" whereby it leased the digger derrick to plaintiff's employer, Henkels & McCoy, Inc.; that the lease was a "purely financial arrangement," wherein FFLG retained a security interest only, and that it never had possession, custody or garde of the digger derrick which allegedly injured the plaintiff. In support of this argument, FFLG introduced a copy of a Master Lease Agreement executed between FFLG and Henkels & McCoy on October 24, 1990, affidavits by David J. Kovacs, Vice President of FFLG, and Robert J. Delark, director of corporate equipment and tools for Henkels & McCoy, attesting that FFLG's only involvement with the equipment at issue was to retain a security interest until the lease was completed; and that pursuant to the terms of the master lease agreement, the lessee selected both the equipment and supplier, assumed responsibility for repair and maintenance as well as the entire risk of use and operation of said equipment, and that at all times, the lessee had physical possession and the right of supervision, direction and control of the leased equipment.
In opposition to the motion, plaintiff maintains there are genuine issues of material fact precluding summary judgment. Primarily, plaintiff alleges that the defect in design of the equipment was a structural defect which existed prior to the lease and that defendant's motion fails to rebut the presumption that as owner, FFLG retained custody of the equipment. Further, plaintiff alleges that only a portion of the lease agreement was filed into the record in support of defendant's motion, and that portion does not identify the particular piece of equipment at issue, and fails to indicate the time period during which the lease was effective or the payment terms of said lease. Despite defendant's assertions to the contrary, plaintiff maintains there is no evidence in the lease agreement itself or otherwise before the court indicating that the lessee would become owner of the equipment at the end of the lease. Plaintiff further claims that the owner retained control of the equipment, evidenced by the lease provisions prohibiting the lessee from altering or modifying the equipment's design and/or structure and from moving the equipment to another place, without prior written approval by the owner. Plaintiff also points out that pursuant to the terms of the *1378 lease, FFLG, as owner, retained the right to claim depreciation of the digger derrick to the IRS for tax purposes, and also enjoyed monetary benefit (rental payments) from the equipment lease. Finally, responding to FFLG's claim that its "ownership" of the equipment was a type of security transaction, plaintiff asserts that a determination regarding FFLG's motive in entering the lease encompasses unanswered questions of fact and is not subject to summary judgment. Plaintiff argues the foregoing are genuine issues of material facts making summary judgment in favor of FFLG improper.
We agree. Primarily, the pleadings, affidavits and attachments leave unanswered questions regarding the nature of the alleged defect, when it arose, and whether it arose prior to or after the lease. Pursuant to the dictates of Ross, 502 So.2d at 1032, which have been expounded but not overruled by the jurisprudence, an owner of a thing who transfers its possession, but not its ownership to another, continues to have garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. Thus, it is relevant to a determination of custody whether the defect was a structural one which preexisted the lease, or a nonstructural one arising from the operation of the equipment after its inception. Furthermore, based on the lease agreement and the affidavits submitted in support of the motion it is unclear whether it was intended or contemplated that the lessee would purchase the equipment and become owner thereof at the end of the lease. In light of assertions to the contrary, this question of fact is relevant in determining the actual degree of control and supervision had over the equipment by either of the parties, as well as the benefit derived by either party as a result of the lease.
Summary judgments are governed by La. C.C.P. art. 966, which has been recently amended in both the 1996 and 1997 legislative sessions. Acts 1996, No. 9 of the First Extraordinary Session of 1996; Acts 1997, No. 483. The effect of these amendments is that summary judgment is now favored as a matter of law. However, the amendments expressly provide that the initial burden of proof shall remain with the mover, and revise the burden of proof and the shifting thereof, once the mover has met his burden. See e.g., Bilbo v. Shelter Insurance Company, 96-1476 (La.App. 1st Cir. 7/30/97); 698 So.2d 691. Having found in this case that the mover failed to meet its initial burden of proving the absence of genuine issues of material fact, the effects of the amendments are inapplicable.
For the foregoing reasons, we find the trial court erred in granting summary judgment in favor of FFLG in light of the unresolved genuine issues of material fact remaining. Accordingly, that judgment is reversed; this matter is remanded to the trial court for further proceedings in accordance herewith. Costs of this appeal are assessed to FFLG.
REVERSED AND REMANDED.
NOTES
[1] Judge Remy Chiasson, retired, serving by special appointment of the Louisiana Supreme Court.
[2] Although Baudoin v. McDermott, Inc., 93-2084 (La.App. 1st Cir. 10/7/94); 644 So.2d 799 concerned the issue of custody over a defective leased crane, the facts do not reveal if it was a financed lease. The issue arose in the context of a lease which had already expired, although the defective crane remained on the lessee's property. The court concluded summary judgment in favor of the lessee was improper based on questions of fact raised by the fact that the lease had expired, leaving unanswered whether the lessee even had a continued right to use the crane, and whether it exercised custody of the crane by its possession of the crane after the lease expired. Thus, the court did not resolve the issue of custody, but indicated that "the fact that the crane was in [lessee's] physical custody at the time of the accident is suggestive of a degree of control." Baudoin, 93-2084 at 4; 644 So.2d at 801. Although the court also reversed a summary judgment in favor of the owner in Baudoin, this was based on questions of fact relating not to the owner's custody of the crane, but rather his status as the injured party's "statutory employer." Therefore, although factually similar, Baudoin is of little guidance.