# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-780

**HOLLY FONTENOT, ET AL**

**VERSUS**

**SAFEWAY INSURANCE COMPANY OF LOUISIANA**

\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2016-0232
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Marc T. Amy, Phyllis M. Keaty and John E. Conery, Judges.

**REVERSED AND REMANDED.**

**Amy, J., dissents and assigns reasons.**

R. Scott Iles
P.O. Box 3385
Lafayette, LA 70502
(337) 234-8800
COUNSEL FOR PLAINTIFFS/APPELLANTS:
 Holly Fontenot and Kristi Young

Holly K. Yandle
Tracey L. Oakley
Angelique P. Provenzano-Walgamotte
W. Brett Cain
Michael W. Landry
400 E. Kaliste Saloom Rd., Suite 4300
P.O. Box 92807
Lafayette, LA 70509
(887) 323-8040
COUNSEL FOR DEFENDANT/APPELLEE:
 Safeway Insurance Company of Louisiana

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

This appeal stems from a single vehicle accident which occurred on December 20, 2015 on South Texas Street in DeRidder, Louisiana. On that date the plaintiff, Holly Fontenot, was operating a 2008 Subaru Impreza with the permission of the owner. The vehicle had been purchased used from a car dealership approximately six months before the accident by Patricia Neil and her husband.[1] The Neils were the parents of Holly Fontenot's fiance, Chris Reid. Guest passengers in the vehicle that day were two minors, Haley Young and Makenzy Young, who were sitting in the backseat. Plaintiff lost control of the vehicle and it ran off the roadway, striking a utility pole. No other vehicle was involved.

Holly Fontenot and Kristi Young, on behalf of her two minor children, Haley and Makenzy, filed suit seeking damages for the injuries allegedly sustained as a result of the accident. The petition alleged Ms. Fontenot suffered "injuries to her back, knees and hand/finger as a consequence of the accident." It was further alleged the two minor children "sustained whiplash type injuries as a consequence of the accident." The sole defendant named in the suit was Safeway Insurance Company of Louisiana, who had issued a policy of insurance covering the Impreza to Patricia Neil.

It was alleged that the accident occurred due to a lack of maintenance on the vehicle. In particular, Plaintiffs contended the Impreza ran off the road because of a broken tie rod, which caused the immediate failure of the steering mechanism. An answer was filed by Safeway, denying the allegations.

The matter was tried before the district court on April 19, 2017. After the close of Plaintiffs' case, Defendant moved for a directed verdict/involuntary

---

[1] Since the purchase of the vehicle a few months prior to the accident, Mrs. Neil, who was the mother of Ms. Fontenot's fiancé, passed away.

2

dismissal pursuant to La.Code Civ.P. art. 1672(B), contending Plaintiffs failed to show any right to relief under the evidence presented. After hearing oral argument from the parties, the trial court orally granted the motion for directed verdict, stating as follows:

> At this time, I will grant the directed verdict. I think that while I don't doubt that the injuries occurred, I believe the basis of this law suit has not been proved. There's been insufficient evidence to prove that there has been no maintenance on the vehicle. There's not been introduced anything about the purchase of the vehicle verifying the mileage, the condition of the vehicle, the warranties or anything other things. There's nothing to prove by any expert what actually caused the car to go off the road. Whether or not as the Officer said, the tie rod broke as a result of causing the crash or if hitting the curb caused the tie rod to break. It could be either way and we don't presume thins under the law. That has to be proven and I think there is a lack of sufficient evidence to prove that at this time. So, the directed verdict is granted.

Judgment was rendered on May 17, 2017, dismissing Plaintiffs' claims with prejudice. Plaintiffs have appealed, arguing the trial court erred in failing to find liability on the part of Safeway as the insurer of a defective vehicle.

## ANALYSIS

A motion for involuntary dismissal is the proper procedural vehicle in cases where the action is not tried before a jury. The procedure governing motions for involuntary dismissal is found in La.Code Civ.P. art. 1672(B), which provides as follows:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the  [2007-1588 La.App. 3 Cir. 5] plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Pursuant to Article 1672, the trial court must consider and weigh the Plaintiffs' evidence and dismiss the matter if it determines they have not met their burden of proof. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271.

3

The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. *Id*. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. See *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. *Id*.

A review of the oral reasons for judgment show that the trial court granted the motion for involuntary dismissal because Plaintiffs failed to establish "what actually caused the car to go off the road," as well as "producing insufficient evidence to prove that there has been no maintenance on the vehicle." Therefore, to grant Plaintiffs the relief they seek on appeal, we must find the trial court's conclusion in these areas to be unreasonable.

Plaintiffs based their suit on the fact that they suffered injuries arising out of the use of a vehicle owned by the Defendant's insured that had a dangerous defect. The Louisiana Supreme Court in *King v. Louviere*, 543 So.2d 1327 (La.1989) held the owner of a vehicle, rather than a driver who has not been charged with maintenance of the vehicle, is liable for damages when an automobile accident arises out of a defect in a vehicle in his care or "garde." Under our law, the responsibility for damages in such a case rests with the owner of the vehicle when it remains in his care. *Id*. In *Williams v. U.S. Agencies Casualty Ins. Co.*, 00-1693 (La.2/21/01), 779 So.2d 729, Justice Victory, in his concurring opinion, discussed the need for placing such responsibility on the owner in such cases:

> . . . the owner is the party liable for damages caused by his vehicle's defects, [and to hold otherwise] would leave the motoring public unprotected whenever such . . . an accident occurs as a consequence of a latent defect in a vehicle that remains under the care and custody of its owner. For instance, if the owner of a vehicle with faulty brakes lends the vehicle to a friend who has an accident as a consequence of the brake failure, the injured party could sue the owner's insurer. . . If

4

there is no coverage for the owner because of a policy exclusion, the innocent injured third party may have no effective recovery. This result would defeat the public policy manifested in the compulsory insurance law and La. R.S. 32:900B(2), which provides that an owner's policy shall insure against loss arising out of ownership, maintenance, or use.

In this case, the testimony of Ms. Fontenot stated she was driving, with permission, Safeway's insured's vehicle, within the posted speed limit on Texas Street, when she heard a loud pop. Her steering mechanism then failed, the vehicle left the roadway and struck the utility pole. Ms. Fontenot's testimony admittedly is sketchy as to the time and distance she traveled after hearing the pop, but she stated she did lose consciousness as a result of the accident. However, there is no indication in the record she was doing anything other than driving her vehicle within her lane of travel until she heard the loud pop. The investigating officer found nothing to indicate Ms. Fontenot had committed any driving infraction. At the scene, a broken tie rod was found on the ground which broke off from the vehicle.

Officer Edward Kuzmik of the DeRidder Police Department, who was called to the scene and investigated the accident at issue, testified as follows concerning the events that surrounded the accident:

Q. Any evidence that this accident happened because of a blow out of a tire or anything like that?

A. No, sir.

Q. Did you have a conclusion of how this accident happened?

A. Based off looking at the totality of the parts on the car and brakeage [sic], I'm not a mechanic but based off of what I've seen in a pat on prior crashes, it appeared that in the front part of the drive train area. The front wheel something broke off on there. I don't know if that was the actual causing factor of it but that was part of it that I observed on the vehicle.

Q. Okay. Do you know of any infractions, driving infractions that had been committed by Ms. Fontenot that caused or contributed to this accident or was it all mechanical failure?

5

A. I didn't see any time of – there was no indicators of any speeding. Didn't have any witnesses, there was no marks on the roadway so, no indicators of any moving violations[or] infraction due to her driving, no.

Q. Were you able to converse with Ms. Fontenot or were her injuries preventative from you having any kind of communication with her at the scene?

A. No, sir. I did speak with her and she did complain of some pain, yes, sir.

Q. Did she tell you what happened prior to the crash?

A. Yes, sir.

Q. Tell us.

A. When I spoke to her, I asked what took place and what happened. She said, she was driving, she heard a loud pop and the car jerked over to the right, she struck a pole and the air bag exploded. That's what the words she said.

Q. Okay. And that was compatible with what you saw at the scene of the accident?

A. Yes, sir.

On cross-examination, Officer Kumzik confirmed the tie rod broke off the vehicle and again reiterated he did not believe the car left the roadway for any other reason:

Q. You testified earlier that you did not see any evidence that the loss of control, experience by Ms. Fontenot was anyway related to a possible tire failure or tire blow. Let me correct myself. How are you sure of that?

A. Based off of us picking – myself and Officer Boone, was on scene as well. We picked the tire up and it wasn't flat.

Q. Okay. You testified earlier that you did not observe any markings on the concrete leading up to where the vehicle left the road way; did you specifically look for them or did you just not notice any?

A. No, I can stand corrected on the actual mark where – I know on my crash report there's a spot where it left the road way on the curb. There was some marks on that but I was actually referring to any skid marks in the road way. But there was a point of impact where she camo off the road way, hit the curb and then directly into the pole.

6

Officer Kumzik acknowledged he could not say categorically if the tie rod breaking was the "causing factor of the accident." Admittedly, as he noted several times, Officer Kumzik is not a mechanic and felt hesitant to make such a conclusion. However, a review of his testimony indicates he saw nothing to reveal that Ms. Fontenot was driving erratically or at an excess speed. There were no skid marks on the roadway, and there was only a scuff mark on the curb where the vehicle left the road. He specifically testified a tire blowout could not have been the cause of the loss of vehicle control, as it was not flat at the scene. The only thing he observed that indicated a reason for the vehicle to have suddenly left the road way was the broken tie rod. Although not a mechanic, Officer Kumzik believed such a malfunction could certainly have led the vehicle to veer suddenly off the road.

We find the evidence adduced during Plaintiff's case in chief was enough to survive a motion for involuntary dismissal. Ms. Fontenot presented evidence that the broken tie rod was the reason for her losing control of the vehicle, veering off the road and striking the utility pole. At this stage the burden shifted to the Defendant's insured to show that the accident was caused by a latent defect which the owner was not aware of and did not result from the failure to maintain and care for the vehicle. Apparently, the trial court improperly placed this burden on the Plaintiffs. It may be true Defendants may be able to meet this burden, but this evidence does not exist in the record before us. All that was offered was speculation that the tie rod may have broken as a result of the vehicle striking the curb or utility poll. However, as Officer Kumzik clearly testified, there was no physical evidence presented below that supported such speculation. Thus, the testimony and evidence presented below preponderates that the broken tie rod was the cause of the accident and the trial court at this stage was manifestly erroneous in concluding otherwise. The law is clear that "[i]n view of the clear legislative

7

policy and other empirical considerations, . . . the owner of an automobile continues to have the garde of it and to be responsible for the damage caused by its vice or defect even while it is in the physical custody or control of another." *King*, 543 So.2d at 1330.

We likewise find nothing elicited at trial below indicates that Ms. Fontenot had been delegated the right or the obligation to perform maintenance on the vehicle. She specifically stated she was not responsible for the maintenance of the vehicle and there was nothing to challenge that assertion. There was nothing presented that she had the right of direction or control of the vehicle to the extent that she was empowered to maintain its structural equipment. Consequently, Ms. Fontenot was not in "a position to detect, evaluate or remedy any vice or defect in the automobile's [structural] system." *King*, 543 So.2d at 1330.

We note part of the trial court's stated reasoning for granting the motion for involuntary dismissal was that Plaintiffs produced "insufficient evidence to prove that there has been no maintenance on the vehicle." As the law clearly provides that duty should be placed on the owner unless Ms. Fontenot was in "a position to detect, evaluate or remedy any vice or defect in the automobile's [structural] system," it was error for her to be held to that duty.

For the above reasons, the judgment of the trial court granting the defendant's motion for involuntary dismissal is reversed. The case is remanded to the trial court for further proceedings. All costs of this appeal are assessed to defendant-appellee, Safeway Insurance Company of Louisiana.

**REVERSED AND REMANDED.**

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

17-780

HOLLY FONTENOT, ET AL.

VERSUS

SAFEWAY INSURANCE COMPANY OF LOUISIANA

AMY, J., dissenting.

I respectfully dissent as I find an affirmation required in this matter.

Importantly, a trial court evaluates a motion for involuntary dismissal upon consideration of all evidence, without special inference in favor of the opponent of the motions, and grants the dismissal if the plaintiff has not established proof by a preponderance of the evidence. *Trahan v. Acadiana Mall of Del.*, 14-232 (La.App. 3 Cir. 10/1/14), 149 So.3d 359. It appears to me that trial court, as the trier of fact, made a straightforward determination that the plaintiffs failed to meet that burden at the close of their case. I find no manifest error in that determination.

Fundamentally, Ms. Fontenot explained only that she was the permissive driver of a vehicle, that she was driving reasonably, and that she heard a "pop" before the vehicle apparently left the road. Officer Kuzmik's testimony was similarly limited as he identified an area where the vehicle hit the curb, left the road, and struck the light pole. He explained that, after the accident, he identified that the tie rod assembly was broken. However, as evidenced by the following passage, Officer Kuzmik did not testify as to the chain of events:

> Q    Are you able to say if striking the curb was or was not a possible source of the loud pop that Ms. Fontenot heard before she lost control?
>
> A    No, ma'am.
>
> . . . .

Q    A few minutes ago when Mr. Iles was asking you some questions, I thought I heard you say that you don't know if the tie rod br[e]aking was the causing factor of the accident. As you sit here today, you still can't say if that's what caused the chain of events.

A    That's correct.

Q    Or if the broken tie rod was [a] consequence of something that caused the chain of events.

A    I don't know. To be honest with you, I'm not a mechanic so I couldn't really tell you. And we're not trained to - - we're not crash Reconstructionist[s].

Q    Sure.

A    So, I can't say that, no.

Thus, upon consideration of either Ms. Fontenot's testimony or that of Officer Kuzmik, it seems to me that the plaintiffs lacked evidence of whether the tie rod assembly was a causative factor in the vehicle leaving the road, or whether the vehicle striking the curb was the source of the loud pop. Given that paucity of factual evidence, I find that the trial court acted permissively in dismissing this matter upon a conclusion that the plaintiff failed to meet her burden of proof.

Although I recognize that *King v. Louviere*, 543 So.2d 1327 (La.1989), discusses an owner's responsibility for the maintenance of his or her vehicle, I find that case ultimately unhelpful in the present matter. Rather, *King* inquired into whether the permissive driver could be held solidarily liable with the vehicle's owner (who was sued in strict liability) for the plaintiff's injuries. *Id.* The permissive driver in that case claimed a latent defect defense in an attempt to exculpate herself from the negligence action lodged against her by the plaintiff. While the supreme court observed that it was the owner who had the duty of maintenance given the facts of that case (the permissive driver was using the car for a work-related errand), it further explained that the permissive driver failed to carry her burden of proving the applicability of the latent defect defense. *Id.* In

short, the plaintiff failed to demonstrate "that the accident was caused *exclusively* by a latent defect in her vehicle and that she was not guilty even of slight negligence that in any way *contributed* to the accident." *Id.* at 1331. The surrounding discussion demonstrates that the inquiry in *King* focused on the permissive driver's own negligence, not on the existence of an alleged defect.

Even assuming the owner's duty of maintenance, however, it seems to me that the plaintiffs were required to demonstrate the existence of the purported defect and, in turn, causation. In my opinion, the trial court's conclusion that they did not do so is supported by the record as, ultimately, the plaintiffs proved only the existence of a sound prior to the subject accident and a post-accident observation regarding the car's condition. Notably, no expert opinion testimony was offered regarding the potential cause of the sound heard by the driver or the potential mechanical issues involved.

For these reasons, I would affirm the trial court's dismissal of this matter pursuant to La.Code Civ.P. art. 1672(B).