NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**20-365**

**HOLLY FONTENOT, ET AL.**

**KRISTI YOUNG**

**VERSUS**

**SAFEWAY INSURANCE CO. OF LA**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2016-0232
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, John E. Conery, and D. Kent Savoie, Judges.

**AFFIRMED.**

**R. Scott Iles**
**Attorney at Law**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Holly Fontenot**
    **Kristi Young**

**Tracy L. Oakley**
**Michael W. Landry**
**P. O. Box 92807**
**Lafayette, LA 70509**
**(877) 323-8040**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Safeway Insurance Company of Louisiana**

**SAUNDERS, Judge.**

Plaintiffs, Holly Fontenot and Kirsti Young, appeal the trial court's decision to dismiss all of plaintiffs' claims after submission of evidence and post-trial memoranda by all parties.

## FACTS AND PROCEDURAL HISTORY:

On December 20, 2015, Holly Fontenot was operating a 2008 Subaru Impreza in DeRidder, Louisiana. Holly was operating the Impreza with permission of the vehicle's owners, Mr. and Mrs. Neal. The Impreza was covered by an insurance policy with Safeway Insurance Company of Louisiana (Safeway).

While Holly drove the Impreza on South Texas Street, a single vehicle accident occurred when the Impreza veered off the road and struck a utility pole. Holly Fontenot and the guest passengers, Makenzy Young and Haley Young, sustained personal injuries during the accident. Holly Fontenot and Kristi Young, the parent of Makenzy and Haley Young, brought suit against Safeway as the insurer of the Impreza alleging the accident occurred because of a lack of maintenance on the vehicle.

The matter was tried on April 19, 2017. After the close of the plaintiffs' case, defendant moved for a directed verdict/involuntary dismissal. After hearing oral arguments from all parties, the trial court granted the defendant's motion and dismissed all of plaintiffs' claims with prejudice. Plaintiffs appealed, and the Louisiana Third Circuit reversed and remanded the case in a four to one decision. *Fontenot v. Safeway Ins. Co.*, 17-780 (La.App. 3 Cir. 6/13/18), 249 So.3d 900. Defendant sought writs from the Louisiana Supreme Court, which were denied. *Fontenot v. Safeway Ins. Co.*, 18-1223 (La. 10/29/18), 254 So.3d 1214.

After the reversal, Defendant presented the video deposition of its expert, Jeremy Hoffpauir, with attachments, and rested its case. On February 28, 2020, the

trial court issued a written judgment denying plaintiffs' claims and dismissing them with prejudice. Plaintiffs, Holly Fontenot and Kristi Young, now appeal.

## ASSIGNMENTS OF ERROR:

**[1].** The trial court erred in admitting the defense evidence in violation of *Daubert v. Merrel Dow Pharmaceuticals*, 509 US 579, 113 S.CT 2786 125 L.3D 469 (1993).

## LAW AND ANALYSIS

Holly Fontenot and Kristi Young (Appellants) argue that Hoffpauir lacked "sufficient facts or data" to come to a reliable scientific conclusion regarding the cause of the accident. The standard of review for a trial court's decision to admit expert testimony is the abuse of discretion standard. *Godchaux v. Peerless Ins. Co.*, 13-1083, p. 3 (La.App. 3 Cir. 6/4/14), 140 So.3d 817, 821, *writ denied*, 14-1411 (La. 10/3/14), 149 So.3d 801. Louisiana Code of Evidence Article 702(A) lays out the requirements for the admissibility of expert witness opinions as follows:

A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

In *State v. Allen*, 41,548, pp. 11–13 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, 1254–55, *writ denied*, 07–530 (La. 12/7/07), 969 So.2d 619, the second circuit addressed the admissibility and review of expert testimony, stating:

In *State v. Foret*, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469

2

(1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02-1188 (La.5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 592–594, 113 S.Ct. 2786. In *Foret*, *supra*, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. Id. Thus, Louisiana has adopted *Daubert*'s requirement that in order for technical or scientific expert testimony to be admissible under La. C.E. Art. 702, the scientific evidence must rise to a threshold level of reliability.... The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Id.* Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Kumho* [*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999)].

Appellants do not attack Hoffpauir's qualifications as an expert, but do challenge whether he had "sufficient facts or data" for his opinion. Appellants assert that Hoffpauir based his testimony on "some google searches of some parts as well as a brand new replacement Subaru tie rod along with its attached apparatuses," as well as "unreliable" photographs of the vehicle. The Appellants also point out that Hoffpauir did not inspect the damaged vehicle or accident scene in person.

Hoffpauir testified that he reviewed the police report, the repair estimate for the vehicle, the color photographs attached to the estimate, the transcript of the bench trial, the deposition transcript of the investigating officer and of Holly Fontenot, the Subaru owner's manual and an exemplar tie rod and steering knuckle, as well as reviewing the NHTSA website for recalls for defects that could have caused the accident and Google Maps and Earth. While an in person inspection of the damaged vehicle and accident scene could have bolstered Hoffpauir's opinion, they were not

necessary in this case. Hoffpauir testified that these are items used by experts in his field, and are used in almost every accident reconstruction.

The photographs used by Hoffpauir show an intact tie-rod connected to a broken steering knuckle, which he stated "indicated there was no separation in the connection between the steering rack and the right-front wheel assembly. Hence, the collision was not caused by a failure of the Subaru's tie-rods." Instead of a mechanical defect, Hoffpauir states that the photographs show damage to the steering system "consistent with damage that resulted from impact with the pole." Hoffpauir explains that the damage to areas around the steering system are in line with a collision to the front-right wheel assembly, and that the "rearward deflection and twisting of the lower control arm indicated the right-front wheel assembly was still attached to the lower control arm" when the vehicle struck the pole. Hoffpauir also explains that the damage to the steering knuckle was consistent with failures seen when there is a direct impact with the wheel assembly. Hoffpauir also stated that had the steering knuckle failed before the impact there would have been scuff marks on the roadway due to the wheel assembly no longer being secured. The scuff marks this would have made were not observed by Officer Kusmik at the scene.

Appellants point out that Hoffpauir stated he was not in a position to testify as to what the actual cause of the accident was, but we note his opinion was focused on whether a tie-rod failure caused the accident and not on finding some other cause for the accident. We have closely reviewed the record and the trial court's decision to admit Hoffpauir's expert testimony, and we do not find that the trial court abused its broad discretion in its determination to admit Hoffpauir's testimony. The items used to prepare Hoffpauir's commonly used by experts in his field and were sufficient to support an opinion on whether a tie-rod failure caused the accident in this case.

4

## CONCLUSION:

For the reasons stated above, we find that the trial court did not abuse its discretion in admitting the defense expert's opinion. Accordingly, we affirm the judgment of the trial court. Costs of this appeal are to be paid by Appellants, Holly Fontenot and Kristi Young.

**AFFIRMED**

This opinion is NOT DESIGNATED FOR PUBLICATION.

Uniform Rules—Courts of Appeal, Rule 2-16.3.